195 So.2d 820

**Dollie K. SMITH et al.**

**v.**

**Jo Fay KENNEDY et al.**

**6 Div. 121.**

Court of Appeals of Alabama.

Aug. 16, 1966.

Rehearing Denied Oct. 11, 1966.

1. Calculated from last date for answering.

Huie, Fernambucq & Stewart, Birmingham, for appellants.

J. J. Cockrell and Robt. F. Lewis, Birmingham, for appellees.

 

PRICE, Presiding Judge.

Mrs. Jo Fay Kennedy sued the defendants for damages for personal injuries consisting of burns on her neck, head and back, suffered while she was getting a permanent wave.

Her husband, William Oliver Kennedy, sued for loss of her services and for expenses incurred on account of the injury to his wife.

The two cases were consolidated for trial and were submitted here on one record.

The complaints were in two counts. Count One in each case charged simple negligence. Count Two alleged wanton injury.

Defendants pleaded the general issue, assumed risk, contributory negligence and a hold harmless agreement signed by the plaintiff Jo Fay Kennedy.

The plaintiffs' demurrers were sustained to the defendant's pleas II, III, IV and V. The cases were submitted to the jury under both counts of the complaint. The jury returned a verdict against the defendants for Mrs. Jo Fay Kennedy for $1,000.00, and in favor of William Oliver Kennedy for $500.00. Motions for new trial were denied. Defendants appeal.

The assignments of error are based primarily on the sustaining of plaintiffs' demurrers to pleas II and V in regard to the hold harmless agreement, and pleas III and IV, in regard to contributory negligence and assumption of the risk. Error is also assigned to the action of the trial court in refusing the general affirmative charge with hypothesis.

Pleas II and V read:

### PLEA II

"For further plea and answer to the plaintiff's complaint, the defendants say that they have heretofore on to-wit: July 23, 1962, been released and discharged from all liability for any and all injuries arising out of the occasion as described in plaintiff's complaint, for that heretofore on to-wit: July 23, 1962, the plaintiff did, for a good and valuable consideration, agree to hold harmless the Birmingham Beauty College and any and all operators of said Beauty College, so that the plaintiff would in no wise hold the defendants liable or accountable for any injury or damage that might occur to her as a result of any work performed on her on the time and date as described in the complaint."

### PLEA V.

"For further plea and answer to the plaintiff's complaint, and to each count thereof, separately and severally, the defendants say that the plaintiff ought not to recover for that heretofore on to-wit: July 23, 1962, the defendant, Mrs. Dollie K. Smith, individually and d/b/a Birmingham Beauty College was operating a school for beauty culture and cosmetology, and the defendant, Robbie Reed, was a student operator therein, and further that on to-wit: July 23, 1962, before the work performed on the plaintiff by the defendants was begun, the plaintiff and defendants entered into the following agreement:

### "HOLD HARMLESS AGREEMENT
(Student Operator Beauty School)

July 23, 1962

I, Mrs. W. O. Kennedy, residing at Trussville, Alabama, Route I, Box 735 do hereby acknowledge that I am fully aware that Birmingham Beauty College is a school for beauty culture and coseme-

tology, that the operators in this school are not being held out as skilled and trained operators, that for this reason, a reduction in the prices customarily charged is being made for this work. Therefore, in consideration of the reduction in price given in this work, it is agreed and understood that I will in no wise hold the above named school, its proprietors, officers or agents, or any of its operators liable or accountable for any injury or damage that may occur to me as a result of work performed on me in this school.

Witness: Robbie Reed—signed: Mrs. W. O. Kennedy

"The defendants further aver that the student operator who performed the said work was a competent student operator but was not held out as being a skilled or trained operator, and further that for this reason, there was a reduction in the price customarily charged for the said work. Wherefore, defendants aver that they have been released and discharged from all liability for any and all injuries arising out of the work performed on the plaintiff, which said work is made the subject of the said complaint and each count thereof."

■ In our opinion the pleas were subject to the demurrers. Under Alabama law a party may not by contract absolve himself from liability for the negligence of himself or his servants. Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 14 So.2d 527; Gulf M. & O. R. Co. v. Scott, 32 Ala.App. 326, 27 So.2d 150.

■ Assuming, but not deciding, there was error in the sustaining of the demurrers to these pleas, it was error without injury. The "Hold Harmless" agreement was admitted in evidence over plaintiff's objections, and all the facts and circumstances surrounding the execution of the agreement were fully developed on the trial. Wood v. Harper, 1 Ala.App. 422, 56 So.

10; Houston National Bank of Dothan v. Eldridge, 17 Ala.App. 235, 84 So. 430.

Pleas III and IV read:

## PLEA III

"The defendant says that the plaintiff ought not to recover for that the plaintiff herself was guilty of contributory negligence in this: That the plaintiff knew the work to be performed on her was to be done by a student operator of the Birmingham Beauty College and not by a skilled and trained operator, and further the plaintiff did, with such knowledge and notice, negligently agree to the work to be performed by the student operator, and that plaintiff's said negligence did proximately contribute to cause her alleged injuries and damages."

## PLEA IV

"The defendants say that the plaintiff ought not to recover for that the plaintiff assumed the risk of injury or damage that might occur to her as a result of work performed at the Birmingham Beauty College in this: that the plaintiff knew that the work to be performed on her was to be done by a student operator not being held out as a skilled and trained operator, and further with said knowledge, the plaintiff did so agree to have the work performed by the said student operator."

■ Demurrers were properly sustained to these pleas. The pleas omit the necessary element of appreciation of the risk. For the defenses of contributory negligence and assumption of risk to apply mere knowledge of the condition is not sufficient. There must have been "an appreciation or consciousness of the danger." Kemp v. Jackson, 274 Ala. 29, 145 So.2d 187. As to the wanton counts of the complaint, contributory negligence and assumption of the risk are not a defense. Anniston Electric & Gas Co. v. Rosen, 159 Ala. 195, 48 So. 798; Day v. Downey, 256 Ala. 587, 56 So.2d 656.

The evidence for plaintiffs tends to show that on July 23, 1962, Mrs. Jo Fay Kennedy who lived at Trussville, Ala., and her sister, Mrs. Martha Glenn, went to the Birmingham Beauty College for the purpose of getting cold wave permanents. Robbie Reed, a student operator, was assigned to give Mrs. Kennedy's permanent and another student was assigned to Mrs. Glenn.

Mrs. Glenn testified that before starting her permanent she was given a big blouse to put on instead of the one she was wearing. The operator also placed a kleenex-type article called Sanek around her neck and then put a plastic cape over her shoulders, which hung below her waist front and back.

Mrs. Kennedy testified she was told to remove her dress and given an old dress to put on. She put this dress on over her underclothing. The operator put a thin towel around her neck but she did not use Sanek nor did she put a plastic cape over the dress. Her hair was first shampooed, cut and then rolled up on rollers. Then the operator put something from a bottle on her hair. The bottle was like a tube, with a little old thing on it. The girl mashed it and the solution ran onto her head. She waited a few minutes, ran cold water on her head and then put something else on it. The solution ran down her neck and back, onto her forehead and into her face. Witness kept wiping her forehead with a kleenex to keep it from getting into her eyes. She could feel it running down her back and the top of her slip, her brassiere, the top, neck, shoulders and back of the old dress and the thin towel were saturated with the solution. Her back came in contact with the back of the chair she was sitting in. She kept telling the operator the solution was running down her back and also told her it was burning, but the operator said it wouldn't hurt her and that she would put salve on it when she got through, but she never put anything on it, except after she combed her hair she put salve on some small places on her face.

After the permanents were finished and they walked out on the street Mrs. Glenn looked at Mrs. Kennedy's back and said it was very red. After they got home Mrs. Kennedy was still complaining of burning sensation and her husband looked and saw there were burns all around her neck, behind her ears and down her back. She was taken to the Leeds Hospital, at Leeds, Alabama, where she remained for about ten days under the care of Dr. Winston H. Erwin.

Dr. Erwin testified he saw Mrs. Kennedy in the emergency room of the Leeds Hospital on the night of July 23rd. She was suffering from "second degree chemical burns of the neck, completely around and extends from the hairline to the shoulder on the sides posteriorily and from the chin to the clavicle, anteriorily, that would be from here to here. (Indicating)." He immediately gave her something for pain, dressed her burns with vaseline gauze-type dressing and admitted her to the hospital. She stayed in the hospital from July 23rd until August 2nd. The burns were redressed at intervals and she was given medication for pain. In his opinion she suffered considerable pain for the first few days. He stated: "Well, of course as you know all burns are painful. Actually a second degree burn for the first period is the most painful type. The reason for that being when you get a third degree burn, many of the fibers of your nerves are destroyed in third degree, where they are only irritated in a second degree burn." Mrs. Kennedy still had some redness and pustules, small areas of infection, when he saw her on August 6th.

There was testimony that Mrs. Kennedy's husband paid the hospital bill amounting to $211.55 and the doctor's fee of $60.00, and that both were necessary and reasonable charges.

Mrs. Kennedy testified she experienced a great deal of pain all the time she was in the hospital, especially when her burns

were dressed, which was several times during the day and night. The blisters opened of their own accord and they ran so much fluid her bed stayed wet. She continued to suffer pain after she was released from the hospital. The pimples rose on her back and she had to go back to the doctor to have them opened. It was two weeks after she left the hospital before she began to feel better. She had no burns or skin irritation before she went to the beauty college.

On cross examination Mrs. Kennedy stated she had had permanents on other occasions and did not receive burns from the waving solutions. The only difference between the permanents given her by licensed beauticians and the one she obtained at the Birmingham Beauty College was that those given by the professionals cost $10.00. She knew when she went to the Birmingham Beauty College that students would be doing the work. She was told by the lady at the desk that the $10.00 wave was a little better than the $5.00 wave, but not enough to tell the difference. She decided on the $5.00 wave. She admitted signing the "Hold Harmless" agreement. She said the operator had already washed and cut her hair and was rolling it on rollers when she showed her the form and asked her to sign it. The operator said it was just in case her hair didn't do right.

Mr. Hugh Baptista testified he is employed as a hair stylist at Pizitz Beauty Salon; that he has had four years' experience and had training before that. He is familiar with beauty parlors and colleges in the area. It is a proper standard care before waving solution is applied to a patron's hair to put a towel around her neck and put some kind of cape or protection covering her back and neck. Before the hair is saturated a piece of cotton is put around the head so that it will absorb the lotion and the towel will catch the excess solution. The purpose of the cape and towel are to protect the person from burning or from damage to clothing. Waving solution doesn't sort of sting. It burns a little more than after shave lotion. Sometimes it leaves a burn mark. Some people are more sensitive or allergic to it, and others it doesn't bother at all. The witness stated that although he did not use the same instrument in applying the waving lotion as that used at the beauty college, the procedure used at the beauty school was a good method. He uses a cotton pad to blot the excess dripping from the scalp.

For the defendant, Mrs. Dolly K. Smith testified she was the proprietor of the Birmingham Beauty College, and that she had been a licensed beauty operator for eighteen years. She described the type and nature of instruction given to the student operators at the beauty school. She then described the duties of the instructors and supervisors at the school. Mrs. Smith stated that one of her instructors, Robert Clark, and she, personally, checked the permanent given to Mrs. Kennedy during the entire time Mrs. Kennedy was at the beauty school. In regard to the permanent wave given to Mrs. Kennedy, Mrs. Smith testified that before the solution was put on a Sanek, a towel and then a plastic cape were put on Mrs. Kennedy, after she had removed her dress and put on a housecoat provided by the beauty school. In addition to these protective devices, Mrs. Smith testified that vaseline was put all around Mrs. Kennedy's hairline and that cotton was stuck to the vaseline. Mrs. Smith stated that during the time Mrs. Kennedy was there she had some medicinal odor about her that resembled Pine Sol or Lysol, and that she thought Mrs. Kennedy was sick. The witness stated the $5.00 price charged Mrs. Kennedy for the permanent wave was a reduced price, and that the beauty shops in the vicinity ordinarily charge $10.00 for it. After the permanent was given, Mrs. Kennedy was placed under a dryer for approximately 45 minutes and she slept prac-

tically all of the time she was under the dryer. Mrs. Smith testified the solution will cause a slight stinging sensation to a few people. She did not hear Mrs. Kennedy make any complaints while at the beauty school and none were reported to her. The only unusual condition of her skin was that there was a very small abrasion on the scalp when Mrs. Kennedy came in, and some foille was put on that before the waving solution was applied. The first time she had any knowledge of any alleged problem was when she was served with the plaintiff's complaint. Mrs. Smith explained why Robbie Reed was not available to testify in court, in that she was was out of the state at some unknown place. Mrs. Smith further testified she supervised the permanent and she did not at any time see waving solution dripping or running down Mrs. Kennedy nor did Mrs. Kennedy make any complaints about a burning sensation. She stated that Robbie Reed, the student operator, followed the recommended practice and procedure in giving Mrs. Kennedy the permanent wave.

Mrs. Smith stated she believed the manufacturer's recommendations on the bottle of the solution used in giving the permanent are that a patch test be made to determine whether a patron is allergic to it, before giving the wave; that she did not believe a patch test was given to Mrs. Kennedy, but that the solution is first put on at the neck, which accomplishes the same result as the patch test. If a person is allergic to the solution the reaction would be a rash; that she has never seen anyone burned or blistered by the solution.

Mrs. Kennedy stated that before going to the beauty college she had not put any liniments or ointments of any kind on her body; that the operator did not put vaseline and cotton around her face before starting the permanent; that she saw a couple of men at the school but they were not checking the work and Mrs. Smith was not supervising the giving of her permanent; that no test was made to determine whether she was allergic to the solution. She said she had worked all the previous night, and after the permanent was finished and she was put under the dryer she dozed a time or two but immediately woke up and that it was while she was under the dryer that she put her head down.

The appellants insist the trial court was in error in refusing to give the general affirmative charge with hypothesis in favor of defendants, because of the plaintiffs' failure to show any causal connection between the injury alleged and the acts complained of. The argument in brief is that there was an absence of testimony tending to show that the waving solution caused the injury. The brief argues further: "The only expert testimony in this area came from the plaintiff's physician, who testified that the plaintiff's 'second degree burns were chemically induced.' The doctor did not testify whether or not the waving solution caused the burns. The doctor did not testify whether or not Pine Sol or Lysol caused the burns. The record is entirely void of any testimony that there was any ingredient in the waving solution that was even capable of causing the injury complained of."

In Shafer v. Barbier et al. (Ky. 1953), 259 S.W.2d 461, plaintiff received a burn while having her eyebrows dyed in defendant's beauty salon. Plaintiff's complaint alleged negligence generally and specifically. The trial court directed a verdict for defendants. In affirming the judgment the Court of Appeals said: "[w]e now look to the pleadings and to the evidence to see if the negligence specifically pleaded was proved. It is pleaded that the dye contained a caustic or burning compound of which the defendants had knowledge. On this point there is a complete failure of proof. There was no attempt to show the chemical contents of the dye."

In the instant case there was no allegation that the waving solution contained any ingredient capable of causing

the injury and the plaintiff was not required to prove such fact.

 Counsel for appellees insist that the doctrine of res ipsa loquitur applies in this case. In Alabama Power Company v. Berry, 254 Ala. 228, 48 So.2d 231, the court said:

"* * * Briefly stated, res ipsa loquitur is: When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, then the injury arose from the defendant's want of care. (Citing cases)

"For the doctrine to apply, there are at least three essentials: (1) the defendant must have had full management and control of the instrumentality which caused the injury; (2) the circumstances must be such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the management had not been negligent; (3) the plaintiff's injury must have resulted from the accident. (Authorities cited)

"The function of the doctrine is to supply a fact which must have existed in the causal chain stretching from the act or omission of the defendant to the injury suffered by the plaintiff, but which the plaintiff, because of circumstances surrounding the causal chain, cannot know and cannot prove to have actually existed. The missing fact is that the defendant was negligent. The rationale of the theory, in part, is that defendant in charge of the instrumentality which caused the injury is possessed of superior knowledge and by reason thereof is better advantaged than plaintiff to know the true cause and therefore, negligence is presumed and the burden is upon the defendant to adduce proof to overcome the presumption."

In Chauvin v. Krupin, 4 Cal.App.2d 322, 40 P.2d 904, the plaintiff sustained a burn on her scalp while she was receiving a machine permanent wave. Plaintiff recovered judgment. Defendants appealed and urged that the negligence charged in the complaint was not proved and that plaintiff was erroneously allowed to recover under the doctrine of res ipsa loquitur. The court said:

"It is a case in which the application of the res ipsa doctrine is eminently just and proper. The devices used in the process were under the exclusive control of the defendants. The injury was one which in the natural course of things would not have occurred had defendants used due care, and plaintiff was therefore entitled to recover, unless the defendants offered a satisfactory explanation to overcome the presumptive evidence of their negligence. This they failed to do. Their testimony, in effect, was that their work was done so carefully that it would have been impossible for plaintiff to have sustained the injury claimed. No attempt was made, however, to account for the fact that, when the operation was finished, plaintiff was suffering from a severe burn. The attempted explanations of defendants were not satisfactory to the trial court, and the finding of negligence is amply supported by the evidence."

In Morrison v. Steppe's Beauticians, (1953) 95 Ohio App. 1, 115 N.E.2d 868, a like factual situation to that in Chauvin, supra, was presented. The trial court held that the rule of res ipsa loquitur was not applicable. The Court of Appeals said:

"In the instant case we are of the opinion that plaintiff presented all the evidence reasonably within her power to explain the cause of the injury. The case is one in which the application of the res ipsa loquitur doctrine is eminently just and proper. The devices used in the process were under the exclusive con-

trol of the defendant. The injury was one which in the natural course of things would not have occurred had defendant used due care, and plaintiff was therefore entitled to recover, unless the defendant offered a satisfactory explanation to overcome the presumptive evidence of its negligence * * *.

"In the case at bar defendant sought to prove that the work was performed in strict compliance with the established custom and that due care was exercised by the operator. Whether or not this evidence was sufficient to overcome the inference of negligence was a proper question for the jury to decide."

In the cases cited above the injuries resulted from the use of some mechanical device. In Bush v. Bookter, (La.App.) 47 So.2d 77, the Louisiana Court said:

"We are of the opinion that the doctrine [res ipsa loquitur] should also apply where dyes or other medicated treatments are used in the hair of the patron to the same extent as in those cases where mechanical devices are used. The patron coming into the beauty shop or salon relies upon the skill and knowledge of the operator who is issuing the beauty treatment to her."

Appellants contend that Mrs. Jo Kennedy knowingly secured a permanent wave from a student operator at the beauty school, for a reduced price, and she knew she was not a skilled or expert beautician.

In Lanza v. Metcalf (La.App.1946), 25 So.2d 453, and in Glossip v. Kelly (1934), 228 Mo.App. 392, 67 S.W.2d 513, it was held that the plaintiffs were entitled to invoke the doctrine of res ipsa loquitur where they sustained injuries in getting permanent waves from student operators in defendants' beauty schools.

■■■ We think Mrs. Kennedy had the right to rely on defendants' compliance with the provisions of Section 279, Title 62, Code of Alabama, 1940, which read in pertinent part:

"Any shop where cosmetology is practiced, or school where such is taught, shall at all times be under the direct supervision of a licensed cosmetologist."

This statute was enacted for the protection of the patron. State ex rel. Dally v. Woodall, 225 Ala. 178, 142 So. 838; Board of Cosmetological Examiners, etc., v. Gibbons, 238 Ala. 612, 193 So. 116.

On the question of assumption of risk by a person receiving a permanent wave by persons in the hairdressing business for pay, see page 881, Anno. Liability of beauty shop, school of beauty culture, etc., for injury to patron, 14 A.L.R.2d 860. This Annotation cites Blankenship v. Van-Hooser, 221 Ala. 542, 130 So. 63, as authority for the proposition that the patron does not assume the risk of such persons being negligent, this being particularly true if the patron has not been warned or if he has no knowledge of any possible danger.

■■■ We are of opinion the doctrine of res ipsa loquitur is applicable here. Plaintiffs' testimony as to Mrs. Kennedy's injuries and the attendant circumstances made out a prima facie case of negligence. Whether the defendants' evidence was sufficient to rebut the presumption of negligence was a question for the jury to decide. There was no error in the refusal of the general affirmative charge as to the simple negligence count.

Assignment of error 9 reads:

"For that the trial court erred in refusing to give the general charge with hypothesis in favor of the defendants, as duly requested in writing."

■■■ The general affirmative charge was requested as to each count of the complaint. There is no separate assignment of error and no argument in brief relative to the refusal of the trial court to give the affirmative instruction in favor of the defendants as to Count 2, the wanton count. This is a situation analogous to that of Turner v. Blanton, 277 Ala. 536, 173 So. 2d 80, where the court said that where the

**564**

complaint consists of more than one count, the assignment of error complaining of the ruling on demurrer should be that the court erred in overruling or sustaining the demurrer to a certain numbered count.

The court further pointed out that an assignment of error embracing several rulings cannot be sustained if any one of them is free from error.

The doctrine of res ipsa loquitur cannot be invoked to prove wilful or wanton negligence or misconduct. Cizek v. Union Stock Yard & Transit Company, 298 Ill.App. 545, 19 N.E.2d 110. The refusal of the general affirmative charge as to the wanton count will not be considered since it was not specifically assigned as error and was not argued in the brief.

The judgment is affirmed.

Affirmed.