274 So.2d 322

### In re WALTER L. COUSE & COMPANY

v.

### The HARDY CORPORATION.

### Ex parte The HARDY CORPORATION.

### SC 221.

Supreme Court of Alabama.

March 8, 1973.

Spain, Gillon, Riley, Tate & Ansley and Ollie L. Blan, Jr., Birmingham, for petitioner.

COLEMAN, Justice.

A contractor brought action against a subcontractor to recover indemnity for a sum of money the contractor had paid to a pedestrian who was allegedly injured as the result of negligence in maintaining a public sidewalk in an unsafe condition.

As last amended, the complaint contained two counts, numbered five and six. The trial court sustained demurrer to both counts, plaintiff took a voluntary nonsuit and appealed to the Court of Civil Appeals, 49 Ala.App. 552, 274 So.2d 316, and that court held that the trial court erred in sustaining the demurrer to both counts of the complaint. The defendant, subcontractor, applies for certiorari to review the judgment of the Court of Civil Appeals.

In count five, the contractor claims indemnity for breach of a contract made with the subcontractor. Contractor alleges that it, as prime contractor for alterations to a certain building, agreed to pay subcontractor an agreed amount to perform certain plumbing, heating, and air conditioning work for the contractor. The contractor alleges that the subcontractor agreed to indemnify the contractor for claims and liabilities arising out of or connected with the performance of the work which subcontractor contracted to perform. The contractor further alleges that a certain pedestrian was injured and contractor has paid certain sums in compromise of suits she and her husband had filed against contractor. Contractor alleges that the claims by the pedestrian and her husband arose out of and were connected with the performance of the work which subcontractor contracted to perform. Contractor alleges that although it has complied with the contract on its part, the subcontractor has failed to protect, defend, and indemnify contractor in connection with the suits filed by the injured pedestrian.

Copies of the complaints filed by the pedestrian and her husband are made exhibits to the contractor's complaint. In her action the pedestrian sued subcontractor, contractor, and Alabama Gas Corporation which has possession of the building and is hereinafter referred to as owner. Pedestrian alleged that, on the day of her injury, the owner occupied the building heretofore mentioned; that prior to said date the other defendants in said cause, by virtue of some contract between themselves and the owner, had torn up or partially torn up the public sidewalk in front of the building and had left certain boards over and along said sidewalk which left it not reasonably safe for the use of the public; that while pedestrian was upon said sidewalk she tripped and fell over the obstruction placed in said sidewalk by the other defendants, and as a proximate consequence thereof she was injured.

Pedestrian further alleged that her injury was caused as a proximate result of the negligence of the owner in causing the public sidewalk to be in a condition not reasonably safe for use of pedestrians and the negligence of the other defendants in tearing up the sidewalk and leaving the same in a condition not reasonably safe for the use of persons using the sidewalk.

The contractor is Walter L. Couse & Co. The indemnity provision of the contract made by contractor and subcontractor recites:

> "6. The Sub-Contractor will protect, defend, indemnify and hold harmless Walter L. Couse & Co. from any damages, claims, liabilities, attorneys' fees, or expense whatsoever, or any amount paid in compromise thereof, arising out of or connected with the performance of this order."

On the appeal by the contractor to the Court of Civil Appeals, the errors assigned are that the trial court erred in sustaining demurrers to count five and to count six respectively and severally. None of the grounds of demurrer is mentioned or set out in the opinion of the Court of Civil Appeals. From the opinion of that court, it appears that the question argued in and decided by that court is whether count five states a cause of action or fails to state a cause of action. The specific objection to count five considered by the Court of Civil Appeals is whether the indemnity provision is an agreement by the subcontractor to indemnify the contractor for liability which is the proximate result of the contractor's own negligence. The Court of Civil Appeals concluded as follows:

> "We believe the language of the indemnity agreement in question to be clear and unequivocal that the subcontractor was to indemnify the contractor against claims from a third party *when such claims* arose out of or were connected with the performance of the sub-

contract even though the contractor himself may have been *guilty as a matter of law of negligence to the third party.*
. . .

"............

"We believe the cases of the Alabama Supreme Court hold that the intention to indemnify the negligence of the indemnitee must clearly appear from the wording of the instrument, but when that intention is clear, the indemnity provisions will be read and construed so as to give them the meaning the parties have expressed, and that *the provision* concerning indemnification *in this instance* is broad enough to cover *the situation in question* and, therefore, Count Five does state a cause of action. . . ." (Emphasis Supplied)

The "situation in question" is that the contractor alleges ". . . that although it has complied with the provisions of said contract on its part . . .," the subcontractor has failed to indemnify the contractor from liability in the suits by the pedestrian and husband, and that the claims asserted by the pedestrian and husband ". . . arose out of and were connected with the performance of the work which the defendant contracted with the plaintiff to perform under the contract attached hereto."

We understand the holding of the Court of Civil Appeals to be that the indemnity agreement requires the subcontractor to indemnify the contractor for the liability imposed on the contractor "as a matter of law" for the allegedly negligent acts of the subcontractor in the ". . . performance of the work which the defendant (subcontractor) contracted with the plaintiff (contractor) to perform under the contract . . .," and the contractor is not guilty of active, primary negligence which proximately caused or contributed to the injury out of which the liability arose.

None of the Alabama cases cited by the Court of Civil Appeals in considering count five has to do with indemnity agreements between a contractor and subcontractor. Four Alabama cases cited in this connection are next hereinafter mentioned.

In Smith v. Kennedy, 43 Ala.App. 554, 195 So.2d 820, a customer at a Beauty College had signed an agreement that she would not hold the operators liable for injury to the customer. A judgment for plaintiff was affirmed. The trial court sustained demurrer to pleas setting up the agreement and the reviewing court held the ruling not to be error, but that if the ruling was error, it was harmless because the agreement was admitted in evidence and all circumstances were fully developed on the trial.

In Eley v. Brunner-Lay Southern Corporation, Inc., Ala., 266 So.2d 276, lessor of a drilling machine sought the construction of the lease. Lessor contended that the lease obligated lessee to indemnify lessor for liability allegedly resulting from the negligence of lessor in designing, maintaining, and supplying the machine. The opinion sets out lease provisions which cover approximately one-half of a printed page. This court considered various provisions in detail, including provisions by which lessee agreed that the machine was in good condition when it was received by lessee and removed fron control of lessor; that under these conditions lessor ran the risk of having someone injured while lessor had no opportunity to inspect or repair the machine or to pass on the skill of the operator. The court considered these conditions as showing a substantial business reason for an agreement that lessee, who had accepted the machine and had control of it, should indemnify lessor for liability arising while the machine was in the custody and control of lessee. This court concluded as follows:

"We think that our cases hold that the intention to indemnify the negligence of the indemnitee must clearly appear from the wording of the instrument, but when that intention is clear, the indemnity pro-

visions will be read and construed so as to give them the meaning the parties have expressed. We think that in the instant case the intention to indemnify was clearly expressed, it was not ambiguous and the indemnity provisions are effective as between the parties." (266 So.2d at 280)

The indemnity provision in the instant case lacks substantial provisions which were contained in the lease in *Eley*.

In Deen v. Holderfield, 275 Ala. 360, 155 So.2d 314, the wife of a tenant sued the landlord for personal injury allegedly resulting from the negligence of the landlord in making repairs on the leased premises. In the lease, it is agreed that the premises are in good and safe condition and the landlord is absolved and released from liability to the tenant, or other party occupying the premies, " ' . . . from any defect in said premises . . . or other cause whatsoever not attributable to the wilful act of the said landlord . . . ' " This court held that the trial court erred in sustaining demurrer to the landlord's plea, which set up the release clause as a defense, saying:

" . . . The evident purpose of the clause was to exonerate the appellant landlord from damages resulting from any cause not attributable to said landlord's willful act. Even if appellee's tenuous distinction between a willful act and a willful injury is accepted, appellant's conduct could be no more than simple negligence, and that is the way the case was tried in the lower court. That a willful act is different from a mere negligent act is an elemental principal of law.

" . . . . . . . . .

"The actions of appellant, characterized by appellee in her own pleadings as negligence, fall far short of a willful act." (275 Ala. at 364, 155 So.2d at 316)

In Republic Steel Corporation v. Payne, 272 Ala. 483, 132 So.2d 581, plaintiffs sued for personal injuries resulting from inhaling fumes and gas caused by defendant's mining operations. Plaintiffs were tenants under a lease from grantees who held under a deed from Republic, the defendant. The deed contained covenants and reservations, some of which were set out in the opinion and cover three-fourths of a printed page. After considering the lease provisions at length and in detail, this court held defendant entitled to the affirmative charge saying, among other things:

" . . . Here, there was no duty on Republic to prevent such fumes and gases from going over on the property occupied by appellees, but to the contrary. As already discussed, Republic had an easement giving it the privilege of doing the very thing of which appellees complain and of which they had notice before moving on the property. . . ." (272 Ala. at 489, 132 So.2d at 586)

In the cases last cited this court accepts, and in some of the cases states, the general rule that in an agreement, the principal purpose of which is not to indemnify or insure, " . . . the intention to indemnify the negligence of the indemnitee must clearly appear from the wording of the instrument . . .," *Eley*, supra. None of those cases, however, considered an indemnity provision in a contract between a general contractor and a subcontractor. The agreements in *Eley, Deen,* and *Republic* are examples of agreements in which the intention to release from liability or to indemnify for the indemnitee's negligence is clearly expressed. The agreement in *Mason & Dulion*, infra, did not clearly express such an intention.

In United States Fidelity & Guaranty Co. v. Mason & Dulion Co., 274 Ala. 202, 145 So.2d 711, this court held that a subcontract did not require a subcontractor to indemnify a contractor for liability for in-

jury that was the result of the negligence of the contractor. This court said:

> " . . . The parties appear to concede, however, that Faulkner's injury did arise out of the work and was the result of the negligence of the contractor, and that the subcontractor was not negligent. We will so consider the case.
>
> " . . . . . . . . .
>
> " . . . The instant contract was prepared by the contractor and, as to the ambiguity now at hand, is to be construed against the contractor." (274 Ala. at 204, 210, 145 So.2d at 712, 717)

Other courts have construed indemnity provisions in subcontracts which are analogous to the provision in the instant case. Many cases are cited in annotations in 143 A.L.R. 312 and 27 A.L.R.3d 663.

"As to primary or active negligence at least, many courts have declared or recognized that the contractor's obligation to indemnify the owner against the latter's own negligence, to be effectual, must be clearly and unequivocally expressed." 27 A.L.R.3d 690. Many other courts and this court (*Eley*, supra) have held that the use of the word "negligence" is not required if the intention to afford such protection clearly appears from the contract or from the language used, the surrounding circumstances, and the purpose and objects of the parties.

In Pittsburgh Steel Company v. Patterson-Emerson-Comstock, Inc. (1961), 404 Pa. 53, 171 A.2d 185, the owner (Pittsburgh Steel) sued the contractor (Patterson) for indemnity for a sum owner had been required to pay in settling an earlier action brought by an employee of a subcontractor (Eichleay) against the owner. Originally owner had made a contract with contractor for installation of a blooming mill on owner's premises. The contract contained the following provision:

> " . . . *'Insurance Clause*: Contractor [Patterson] will indemnify, save harmless and defend buyer [the present plaintiff-appellant] from all liability for loss, damage or injury to person or property in any manner arising out of or incident to performance of this order and will furnish buyer with proper evidence that contractor is insured against such liability.
>
> " 'Contractor will indemnify, save harmless and defend buyer from any and all claims, demands or suits made or brought against buyer on account of any of the terms or provisions of any applicable Workmen's Compensation law and will furnish buyer with the proper evidence that contractor is insured against all liability made under such law.' " (404 Pa. at 55, 171 A.2d at 186)

Contractor was to perform the electrical work. To complete construction and installation of the mill, contractor entered into a contract with the additional defendant, the subcontractor. The contract between contractor and subcontractor contained the identical quoted provision which was in the owner's contract with contractor.

As a result of negligent operation of a crane by an employee of *the owner*, one of subcontractor's workmen was injured. The workman sued owner, and subcontractor was brought in as additional defendant. Owner voluntarily settled with the workman.

Owner then sued contractor for indemnity under the contract, and contractor made subcontractor an additional defendant. The jury returned verdict against both contractor and subcontractor. The trial court granted the motions of contractor and subcontractor for judgment non obstante veredicto, and the owner appealed. The Supreme Court of Pennsylvania affirmed and, among other things, said:

"Plaintiff's principal contention is that under the broad indemnity clause above quoted, Patterson is under a duty to indemnify plaintiff for sums paid by it to Eichleay's injured workman even though plaintiff's own negligence was legally the cause of the injury. Contracts indemnifying

a party against his own negligence are valid: (Citations Omitted) However, the law is well settled that the intention to include within the scope of an indemnity contract, a loss due to the indemnitee's own negligence, must be expressed in clear and unequivocal language. (Citations Omitted)

" . . . . . . . . .

" 'In Manhattan Ry. Co. v. Cornell, 54 Hun. 292, 7 N.Y.S. 557, affirmed by the Court of Appeals of New York, 130 N.Y. 637, 29 N.E. 151, a contractor, employed to construct an extension to the station platform of a railway, indemnified the railway company against "all loss, cost or damage . . . *from any damages arising from injuries* sustained by mechanics, laborers or other persons, by reason of accident or otherwise." During the progress of the work a laborer in the employ of the contractor was killed by an engine of the railway company for which the widow of the laborer recovered damages against the company. Suit was then brought by the company against the contractor on his indemnity contract, but it was held that the contract did not indemnify the company against the negligence of its employees. In the opinion of the court it is said: "For, while the language of this part of the contract is very general, it cannot reasonably be so construed as to impose upon the contractors the obligation to protect the plaintiff against the carelessness or negligence of persons in its own employment. What the party designed and intended by this part of the agreement was to indemnify the plaintiff against liability for any damages or injuries that might be sustained by persons in the employment of the contractors in the progress and execution of their work . . . There was no relation whatever existing between them (employees of the railway company) and the contractors, and it is not reasonable to suppose that in the use of this language, either the plaintiff or the contractors intended or understood the latter to be obligated to indemnify the plaintiff against the carelessness or misconduct of its own servants or employees."

" . . .

" 'We think it clear, on reason and authority, that a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed *in unequivocal terms*. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. *No inference from words of general import can establish .it*. The manifest purpose, in such cases, to indemnify against the injury which, under the circumstances, could reasonably be apprehended only from the action of the indemnitor or his servant, is a weighty consideration in construing indemnity contracts. The circumstances surrounding the parties, the one, the owner for whom the building is to be erected, and the other, the contractor who is to construct the building and hence from whose acts injury to persons and property may be anticipated, would seem to make the conclusion irresistible, that unless expressly stipulated in the contract the owner is not to be indemnified against his own negligence. In the case in hand the parties have not expressly stipulated against injury occasioned by the indemnitee's own negligence, and we are satisfied, from the terms of the instrument read in the light of the circumstances surrounding the parties as well as the manifest purpose inducing the bond, that they did not intend to protect the indemnitee against his own or his servant's negligence.'

"In the instant case the indemnity clause is expressed in broad general terms. However, there is no clearly expressed or unequivocal language in the clause of indemnity to show that indemnification for its

own negligence was intended. Moreover, plaintiff drew this contract 'and therefore if its meaning is ambiguous or reasonably susceptible of two interpretations, it must be construed most strongly against the party who drew it: . . .' (Citations Omitted)

" . . . However, in the present case the facts are quite different. The indemnitee remained in possession of the premises. Its own employees continued working under its exclusive control. Under the construction contended for by plaintiff, Patterson and in turn Eichleay would be made insurers for acts of negligence over which they had or could have no control. Without more direct and unequivocal language in the contract, it is unreasonable to infer or conclude that the parties intended an indemnification of such magnitude." (404 Pa. at 56, 57, 58, 59, 60, 61, 171 A.2d at 187, 188, 189)

See also: Boston & M. R. R. v. T. Stuart & Son Co., 236 Mass. 98, 127 N.E. 532; Kansas City Power & Light Co. v. Federal Construction Corp. (Mo.), 351 S. W.2d 741; Perry v. Payne, 217 Pa. 252, 66 A. 553.

The contract in the instant case is designated "PURCHASE ORDER CONTRACT," and is addressed by contractor to the subcontractor. The order contains the following provision:

"Please furnish all labor, equipment and material to complete the PLUMBING & DRAINAGE, HEATING, VENTILATING AND AIR CONDITIONING as outlined, but not limited to Division # 33 and # 34, all in accordance with plans and specifications for the sum of: ————"

The parties certainly intended that the subcontractor would perform the "order." Nothing in the contract or elsewhere suggests that the contractor or its employees will engage in "the performance of this order." Against whose acts did the parties intend that subcontractor should be held to indemnify the contractor? The reasonable construction is that the parties intended that subcontractor should indemnify for the acts of those persons who the parties intended would be engaged in "the performance of this order." The persons thus intended to be engaged were the subcontractor and its employees, no one else. For their acts subcontractor agreed to indemnify.

 If, by the terms of the contract, subcontractor is to be held to assume the risk of uncertain and unlimited liability for the acts of contractor's employees, over whom subcontractor has no right of selection or control, reason and fairness require that the subcontractor be put on notice, by clear and unambiguous language in the contract, that subcontractor has assumed that risk.[1]

1. In suit for indemnity by Perry, the owner, to recover indemnity from contractor, the court said:
"It is contrary to experience and against reason that the contractors should agree to indemnify Perry against the negligence of himself or his employes. It would make them insurers, and impose a liability upon the contractors, the extent of which would be uncertain and indefinite, and entirely in the hands of Perry. The results of such a liability might become most disastrous. While the consideration named in the contract for the construction of the building and indemnifying the owner was large, yet it was wholly inadequate to justify the contractors in assuming liability for his negligence in view of the responsibility in constructing the building. The profits to be realized on the contract were entirely too small to warrant the contractors in agreeing to assume a liability of such great proportions and of such unlimited extent. A single act of negligence on the part of the owner or his employes, over whom the contractors would have no restraint or control whatever, might create a liability which a lifetime of successful business could not repay. An interpretation of the bond which might give rise to such results could hardly be regarded as reasonable or as giving effect to the intention of the parties." Perry v. Payne, supra, 217 Pa. at page 259, 66 A. at page 555.

We agree that the instant contract is broad enough to require indemnitor to indemnify the indemnitee in "the situation in question" wherein the indemnitee is "guilty as a matter of law of negligence to the third party" because of the active, primary negligence of the indemnitor whose active, primary act caused the injury.

By denying certiorari, we are not to be understood as approving a construction of the indemnity agreement so as to require the indemnitor to indemnify in a situation where the injury is caused in whole or in part by the active, primary negligence of the indemnitee.

Writ denied.

HEFLIN, C. J., and BLOODWORTH, McCALL, and JONES, JJ., concur.