304 So.2d 168

**GEORGIA, FLORIDA, ALABAMA TRANSPORTATION COMPANY, INC.**

**v.**

**DEATON, INC.**

**SC 645.**

Supreme Court of Alabama.

Dec. 5, 1974.

William C. Knight, Jr., Birmingham, for appellant.

London, Yancey, Clark & Allen, Birmingham, for appellee.

MERRILL, Justice.

This appeal is from a decree rendered in a declaratory judgment proceeding in which the trial court held that the lessee, appellant Georgia, Florida, Alabama Transportation Company, Inc., would be required to defend and indemnify the lessor, appellee Deaton, Inc., against all claims asserted by John F. Hudson and Norman L. Hulsey.

Georgia, Florida, Alabama Transportation Company, Inc. (hereinafter referred to as GFA) and Deaton, Inc. (hereinafter referred to as Deaton) are engaged in the truck freight business. On July 30, 1971, GFA and Deaton entered into an agreement known as Equipment Interchange Agreement (hereinafter referred to as E. I.A. or Agreement).

The purpose of an E.I.A. is to permit the lessor's fully loaded truck to be delivered to a destination where the owner has no "operating rights." The using carrier (lessee) delivers the goods to the destination where it has "operating rights" and receives payment for the delivery. The E.I.A. saves the expense of unloading and reloading, and permits the lessee (GFA) to hook its tractor to the owner's (Deaton's) trailer and move it to a destination where Deaton does not have "operating rights."

The following provision in the agree-- ment was the one requiring construction and interpretation:

"3c Carrier liability for persons or property:

(1) For third persons or property of third persons:

The Using Carrier, while in possession of interchange equipment, releases and agrees to defend and hold harmless the owner and any intermediate carrier or provider furnishing said equipment, from and against any and all loss, damage, liability, cost or expenses suffered or incurred by the owner, and any intermediate carrier or provider, arising out of or connected with injuries to or death of other persons or loss or damage to property of other persons arising out of the Using Carrier's use, operation, maintenance or possession of interchange equipment; except loss or damage to such interchange equipment, or cargo being transported therein or cargo being loaded or unloaded or held at terminal or transit points incident to transportation."

On July 30, 1970, one of the appellee's loaded trailers was picked up from their LTL terminal in Birmingham by an agent of appellant GFA. At the time the trailer was picked up, employees for both GFA and Deaton signed the trailer report pursuant to the requirements of the E.I.A. There is a specific section for the brake system, but this was not completed by either GFA or Deaton.

Late Friday afternoon, July 31, 1970, while the trailer was in GFA's terminal, a GFA maintenance man detected a defective air valve on the brake system of the trailer (# 4105) and "grounded" the trailer. The maintenance man then reported this defect to the GFA terminal manager.

John F. Hudson, a GFA driver, arrived at GFA's terminal early in the morning on August 1, 1970, and received paper work instructing him to deliver trailer # 4105 to Geneva, Alabama. He connected GFA's tractor to the Deaton trailer. Hudson then

left GFA's terminal traveling south. When he reached a point about halfway down the southern slope of Shades Mountain on U. S. 31, Hudson's trailer brakes failed. He continued down the hill to a point where Columbiana Road intersects with U. S. 31, and at that intersection, his truck collided with an automobile driven by Norman L. Hulsey.

Hudson and Hulsey subsequently filed actions at law against GFA and Deaton for the recovery of damages as a result of injuries received in the accident.

On November 22, 1972, appellee Deaton filed its bill for declaratory judgment seeking a declaration of its rights under the lease agreement. Named as respondents were GFA, Caton Transfer Company, Inc., John F. Hudson and Norman L. Hulsey. It was stipulated that where the word "Caton" appeared, it was one and the same corporation as GFA. Deaton sought and secured an injunction against Hudson and Hulsey staying prosecution of their suits against Deaton.

The cause was tried and a final decree entered on April 6, 1973, holding that GFA was obligated to defend, indemnify and hold harmless Deaton against the claims asserted by Hudson and Hulsey in their suits at law against Deaton. The trial court's decree included the following findings:

"Both Hudson and Hulsey alleged that the accident was caused by faulty brakes on the interchange equipment due to the negligence of the Complainant. The Court does not find from the testimony produced at this hearing that the Complainant or Respondent, Caton (GFA), was guilty of negligence in the maintenance of the brakes on the trailer that was the subject of the interchange.

"The agreement here for interpretation has been approved by the Interstate Commerce Commission and is in wide use between many trucking concerns. It is for the most part clear and unambigu-

ous in its terms. In the construction of the entire contract the Court has little difficulty in finding that it was the intention of the parties to the agreement that the Complainant would be due indemnity from Respondent, Caton."

Appellant GFA contends that the parties did not intend for GFA to indemnify Deaton, for Deaton's own negligence since the clause did not contain "talismanic" words, i. e., since it did not include the phrase "including the negligence of the indemnitee."

Our cases hold that the intention to indemnify the negligence of the indemnitee must clearly appear from the wording of the instrument, but when that intention is clear, the indemnity provisions will be read and construed so as to give them the meaning the parties have expressed. Eley v. Brunner-Lay Southern Corp., 289 Ala. 120, 266 So.2d 276; Walter L. Couse and Company v. Hardy Corporation, 49 Ala.App. 552, 274 So.2d 316, cert. denied, 290 Ala. 134, 274 So.2d 322.

We have also stated that the use of the word "negligence" is not required if the intention to afford such protection clearly appears from the contract or from the language used, the surrounding circumstances, and the purpose and objects of the parties. See Walter L. Couse and Company v. Hardy Corp., supra; Eley v. Brunner-Lay Southern Corp., supra; Republic Steel Corp. v. Payne, 272 Ala. 483, 132 So.2d 581.

In Eley, supra, the lessor of a drilling machine sought the construction of a lease. Lessor contended that the lease obligated lessee to indemnify lessor for liability allegedly resulting from the negligence of lessor in designing, maintaining and supplying the machine. This court considered various provisions in detail, including provisions by which lessee agreed that the machine was in good condition when it was received by lessee, that the lessee would provide insurance protection, and

that the lessee would indemnify the lessor against all loss, damage, expense and penalty arising from the operation of the equipment during the rental period. We stated in *Eley*, supra:

"* * * Under these conditions, appellee, as lessor, ran the risk of having someone injured or property damaged while the equipment was being operated, and appellee did not have the opportunity of inspecting or repairing the machine, or passing upon the skill of the persons operating it. There was a substantial business reason why the lease should contain an agreement that during the period of the lease, the appellant would accept responsibility for any injury that might result from the use of the machine. * * *"

■ The agreement here under consideration provides that the using carrier (GFA) agrees to defend and hold harmless the owner (Deaton) from *any* and *all* loss arising out of the using carrier's (GFA's) use, operation, maintenance or possession of the equipment.

In the present case, Deaton introduced in evidence the trailer interchange receipt:

"I hereby certify that on the date stated first above, I carefully inspected the equipment described above, that this is a true and correct report of the results of such inspection, and that possession of such equipment was taken on behalf of the acquiring carrier at the place, date and time first indicated above. Signed David." (David was an employee of GFA who picked up the trailer when Deaton notified GFA that the load was ready).

Appellee Deaton relies chiefly on Eley v. Brunner-Lay Southern Corp., 289 Ala. 120, 266 So.2d 276. GFA apparently concedes that *Eley* is apt authority to support the holding of the trial court here, because it says in brief:

"* * * Post *Eley* without the qualification supplied by *Couse,* the indemnity clause presently before this Court would require indemnity on behalf of Appellant under the subject facts. The *Eley* court found that the general indemnity agreement they were called on to interpret was sufficiently clear to include indemnity based on claims arising due to the indemnitee's own negligence."

The "qualifications" in *Couse,* 290 Ala. 134, 274 So.2d 322, are contained in the last paragraph of the opinion in that case, which said:

"By denying certiorari, we are not to be understood as approving a construction of the indemnity agreement so as to require the indemnitor to indemnify in a situation where the injury is caused in whole or in part by the active, primary negligence of the indemnitee."

There were no "talismanic" words in either *Eley* or *Couse.*

The Court of Civil Appeals followed *Eley* in *Couse,* 49 Ala.App. 552, 274 So.2d 316, and this court, on certiorari, denied the writ with an opinion, 290 Ala. 134, 274 So.2d 322. We do not see any conflict or qualification of our holding in *Eley.* The finding of the trial court was in conformity with our opinion in *Eley* and the two opinions in *Couse.*

There are a few distinctions between *Couse* and *Eley* and the instant case. In *Couse,* the dispute was between a contractor and a subcontractor, and this court stated that: "The indemnity provision in the instant case (*Couse*) lacks substantial provisions which were contained in the lease in *Eley.*" In *Couse,* the contract was prepared by the contractor and, as to any ambiguity, was to be construed against the contractor. In the instant case, the contract was prepared by hundreds of trucking companies and was adopted by mutual agreement. In *Couse,* the property remained in the possession of the contractor. In the instant case, the custody of the property passed completely and exclusively from the control of the owner.

The agreement, § 3b(4), provides:

"3b The carrier initially acquiring use of interchange equipment: (GFA)

" * * *

"(4) Shall have complete control and supervision of such equipment, and such equipment shall be operated under its common carrier responsibility to the public and public authority while in its possession; and the carrier initially furnishing the equipment (Deaton) shall have no right to control the detail of the work of any employee or agent operating or using said equipment during such time. * * *"

Here, GFA had full and complete control of the trailer from the time it took it and gave its receipt to the time of the accident. While in its custody, GFA actually took the trailer out of service. But someone, while it was in GFA's custody, let the trailer get away, and there was no evidence that the driver Hudson knew that there was a defective air valve, and he inspected the unit before he left with it. All of this time, GFA had complete control and custody of the trailer and, under the agreement, Deaton had no right to control the work of any GFA employee handling the trailer.

The decree of the trial court was in accord with prior decisions of this court.

█ Appellant argues that one "finding" of the court is not supported by any evidence, and "by making and relying on the erroneous finding, which is the sine qua non of the court's ruling, the court committed reversible error."

The questionable finding is the second sentence of the following paragraph in which the court was explaining the position of the parties in the final decree:

"Equipment, a trailer, was interchanged in accordance with the afore-mentioned agreement between the Complainant and Respondent, Caton whereby Caton took the equipment from Deaton. The interchange was for the benefit of Respondent, Caton to expedite a shipment of goods to be carried to Geneva, Alabama by Respondent, Caton."

Appellant construes the sentence to mean that the court found that GFA (Caton) "was to derive the greatest benefit from" the agreement. We do not so construe the statement, and we are convinced that this was not the basis of the court's decision. To us, the sentence means merely that GFA did receive a benefit from the interchange under the agreement and that made the agreement applicable because Deaton also received a benefit. We think it is plain that the benefits were mutual, and that the trial court was not attempting to say, and did not say, that GFA derived the greatest benefit under the agreement.

Moreover, if we have not correctly interpreted the sentence in the decree, there was no reversible error regardless of which party may have derived the "greatest benefit." We have already indicated that the trial court reached the correct result.

█ The rule is that if the decree correctly determined the equities of the case, the reasons upon which the trial court acted are unimportant and the decree or judgment of that court will be affirmed. A correct decision will not be disturbed because the court gave a wrong or insufficient reason therefor. Cherokee County v. Cunningham, 260 Ala. 1, 68 So.2d 507; Family Land & Investment Co. v. Williams, 273 Ala. 273, 138 So.2d 696; Robinson v. Robinson, 273 Ala. 192, 136 So.2d 889.

Affirmed.

HEFLIN, C. J., and HARWOOD, MADDOX and FAULKNER, JJ., concur.