**Herman Edward MAJORS, Individually and d/b/a Majors Farms, Plaintiff,**

v.

**KALO LABORATORIES, INC., a corporation, and Helena Chemical Company, a corporation, Defendants.**

Civ. A. No. 75–187–N.

United States District Court, M. D. Alabama, N. D.

Oct. 2, 1975.

---

**34.** *See, Hudak, supra,* 238 F.Supp. at 792, and 1 Moore's Federal Practice, ¶ 0.78[2].

William D. Coleman, Capell, Howard, Knabe & Cobbs, Montgomery, Ala., for plaintiff.

Robert S. Lamar, Jr., Ball, Ball, Matthews & Lamar, Montgomery, Ala., for Kalo Laboratories.

Bibb Allen, London, Yancey, Clark & Allen, Birmingham, Ala., Charles E. Porter, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for Helena Chemical.

## ORDER

VARNER, District Judge.

There are now presented to this Court issues concerning the conscionability or unconscionability under the applicable provisions of the Uniform Commercial Code of certain limitations or exclusions of consequential damages in connection with the sale of the soybean inoculant product Triple Noctin manufactured by Defendant, Kalo Laboratories, Inc. [hereinafter Kalo], and sold to Plaintiff by Defendant, Helena Chemical Company [hereinafter Helena]. The conscionability of these exclusions, more particularly described hereinafter, has been drawn into issue by the third claim of the complaint herein, by the motion of Plaintiff to strike Kalo's second defense to the complaint, and by the motion of Helena to strike Kalo's second defense to Helena's cross-claim. An evidentiary hearing on these questions of conscionability was held in open court on September 18 and 19, 1975, all parties being present by counsel. Parties agree that the question of conscionability is for the Court.

The pleadings herein, together with the evidence introduced at the aforesaid hearing, establish the following uncontested facts:

1. (a) Prior to Plaintiff's purchase of Triple Noctin and as part of the sales talk of a representative of Helena in connection with said purchase, Plaintiff was given a promotional brochure or pamphlet prepared by Kalo which contained the following language:

> "100% GROWER GUARANTEED Satisfaction guaranteed or the purchase price of this product will be refunded immediately by KALO Laboratories, Inc. Manufacturer's liability is limited to the refund, [sic] There are no warranties which extend beyond the description on the face hereof and the manufacturer is not liable for consequential damages."

The underlined caption was distinguished by being in larger, capital type and by being printed in red. Other print was black.

(b) Upon each package of Triple Noctin sold to Plaintiff appeared the following language:

> "GUARANTEE: Satisfaction guaranteed or the purchase price of this product will be refunded immediately by KALO Laboratories, Incorporated.

Manufacturer's liability is limited to this refund. There are no warranties which extend beyond the description on the face hereof and the manufacturer is not liable for consequential damages."

2. The distributorship contract between Kalo and Helena, by which Helena purchased the Triple Noctin, ultimately sold to Plaintiff herein, contained the following language:

"All claims for alleged defective Products, shortages or other cause shall be deemed waived unless made in writing and received by Kalo within 15 days after distributor learns of the alleged defect, but in no event later than 120 days after Distributor's receipt of the products. Distributor's exclusive remedy and Kalo's limit of liability for any and all losses or damages resulting from defective Products or from any other cause shall be for the purchase price of the particular delivery. * * * "

Upon consideration of the pleadings herein, the briefs of the parties, and the evidence and arguments presented at the aforesaid conscionability hearing, it is the opinion and judgment of this Court that the exclusions of consequential damages in issue are unconscionable, both as to Plaintiff and as between Helena and Kalo, within the meaning of Code of Alabama, Title 7A, §§ 2–719(3) and 2–302.

By the representations on the Triple Noctin packages and in the advertising brochure as set out above, Kalo attempted to sell its product as "100% guaranteed" while limiting this guarantee to a return of the purchase price. Upon consideration of the "commercial setting, purpose and effect" of the exclusion, as provided for in § 2–302(2), it clearly appears that the exclusion is unconscionable on the facts of this case.

At the conscionability hearing, Plaintiff presented evidence of tests conducted before the sale to Plaintiff herein which established that there was grave doubt as to whether the new freeze-drying process relied upon by Kalo for the effectiveness of Triple Noctin and other Kalo products employing the same method for preserving essential bacteria in a live state was, in fact, an effective process. The evidence also establishes that Kalo knew of this uncertainty as to the effectiveness of its new product. Yet, the advertising brochure handed to Plaintiff prior to his purchase makes no mention of the experimental nature of the product.

Were this exclusion to operate merely to prevent Kalo from becoming an insurer of crop yields, which are affected by numerous and incalculable variables of weather and other factors, a different case might be presented. It is clear from the allegations of the complaint herein, however, that Kalo seeks to use this exclusion as a defense to a claim for consequential damages based upon an alleged latent defect in the product itself, which will, of course, be a matter of proof at trial. In this case the undisputed testimony is that there is no means by which a farmer, with the naked eye and without the assistance of scientific examination not ordinarily available, can discern whether or not the bacteria in the product are dead or alive and, thus, whether or not Kalo's freeze-drying process is working or whether or not the product will be effective. Discovery of any such defect must await the development of the crop, by which time large consequential damages may be expected to have arisen, caused by the passing of the planting season and by large expenditures in cultivation.

If the exclusion is conscionable, the remedy of an aggrieved purchaser will be limited to the purchase price of the product, which undisputed testimony established to be about 30 cents per acre. At the conscionability hearing, Plaintiff testified that his cost per acre of cultivating, planting and harvesting the crop was $90.00 to $100.00 per acre, and it is clear that Kalo, an established manufacturer of agricultural products, knew that expenditures would normally be in that range. Thus, the remedy left to a purchaser after operation of the exclusion is

grossly disproportionate to the expenditures an injured party would be expected to make in order to avail himself of the value of the product. This Court is of the opinion that, in the case of a latent defect such as is alleged here, an exclusion such as the one herein makes the remedy available to a purchaser an illusory one which "represent[s] no remedy at all", *Neville Chemical Co. v. Union Carbide Corp.,* 294 F.Supp. 649 (WD Pa. 1968), affm'd. in part, vacated on other grounds 422 F.2d 1205 (3rd Cir. 1970), and that such an exclusion leaves only a remedy which can be said to "fail of its essential purpose." § 2–719(2). In the words of the Official Comment to § 2–719:

> "It is of the very essence of a sales contract that at least minimum adequate remedies be available  *  *  *  [the parties] must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract."

In a recent case presenting facts strikingly similar to the case at bar, the Supreme Court of Florida refused to enforce an exclusion like the one here in issue. *Corneli Seed Co. v. Ferguson,* 64 So.2d 162 (Fla.1953). In that case a latent defect was alleged in that seed warranted to be of one type were, in fact, of a different but visually indistinguishable type. The Florida Court held that an exclusion of consequential damages is unconscionable in a context of crop deficiency, where there is "a defect  *  *  *  which is latent." 64 So.2d at 163.

In summary, the situation presented here is one of an alleged latent defect in a product whose effectiveness was known by its manufacturer to be questionable and an exclusion which has the effect of foreclosing any recovery by a farmer for large and foreseeable consequential damages for crop failure. This is, therefore, a proper case for a determination that the attempted exclusion is unconscionable, and such is the opinion of this Court.

The same factors that compel a finding of unconscionability in the foregoing situation also operate, on the facts of this case, to render voidable the exclusion of consequential damages in the distributorship contract between Kalo and Helena. This is so because any damages recovered against Helena on a theory of adoption of a warranty of Kalo (the existence of which is not adjudicated in this order) will be the same damages discussed hereinabove. Both transactions present commercial situations, calling for application of the same principles. While it may be true that the relative bargaining power of the parties was different in the two transactions, this Court has not relied upon any disparity in bargaining power, and as the Court has pointed out, the Official Comment to § 2–302 suggests that such a consideration would be inappropriate. Although Helena did not itself have to expend the large sums claimed herein as consequential damages in order to obtain the value to it of the product, its possible liability for breach of an adopted warranty was foreseeable, and its inability to collect against Kalo would cause its remedy against Kalo to fail of its essential purpose in the same manner as has been outlined hereinabove with regard to Plaintiff's claim.

At this time the Court makes no ruling as to the effect of the attempted disclaimer of all warranties to Helena by Kalo standing alone and in the absence of potential liability on an express warranty to a user of the product, since that question is not now properly presented. The Court's ruling at this time is merely that, if there is found to be an express warranty to a user of the product such as Plaintiff herein, the exclusion of consequential damages therefor having been found to be unconscionable, the manufacturer cannot escape liability to the retailer of such product where the consequential damages involved are likely to be grossly disproportionate to the cost of the product, where the defect occasioning the loss was latent and where, as here, the retailer

would be a victim of "unfair surprise" (in the words of the Official Comment to § 2–302) if he were forced to bear alone the consequences of the restriction in the manufacturer's guarantee. In this situation, where the alleged defect is a latent one, the absolute time limitation of 120 days of the attempted exclusion must also fail. See *Neville Chemical Co. v. Union Carbide Corp.,* supra. However, there would seem to be no reason to deny effect to the language of the distributorship agreement which provides for notice within 15 days after the distributor learns of the alleged defect. The mixed question of fact and law as to whether Kalo was adequately notified is, of course, reserved for trial.

Kalo has cited cases from the State of Missouri, the law of which is stated in the distributorship contract to control the same, in support of the view that exculpatory clauses of the type herein, between commercial parties, are enforceable in that State insofar as they foreclose damages for negligence. Kalo has also cited Alabama cases in support of its contention that such exculpatory clauses are not always contrary to the public policy of Alabama. None of the cases cited, however, either from Alabama or Missouri, concern situations in any way comparable to the instant case. These cases involve neither latent defects nor warranties nor the applicability of the Uniform Commercial Code. The Uniform Commercial Code has been adopted in both Missouri and Alabama, and in the absence of some authority in point, this Court declines to rule that the public policy of either State is not expressed in the provisions for determination of unconscionability as outlined above.

It is to be noted that, so far as Kalo's liability to Plaintiff is concerned, there is no contractual waiver of negligence. So far as Kalo's liability to Helena is concerned, it appears to the Court that the issue of Kalo's exculpation from negligence could only arise if Helena is held liable to Plaintiff and Helena seeks to recover against Kalo on a negligence theory. In this way, it is possible that a negligence claim might be presented independent of a breach of warranty claim so as not to be controlled by the Uniform Commercial Code.

■ This Court is aware that the law of Alabama as to when exculpatory clauses covering negligence are unenforceable as against public policy is in a somewhat unsettled state. See Robert W. Rieder, "Exculpatory Clauses", 36 Alabama Lawyer 254 (April, 1975). The general rule in Alabama, however, is that a party may not contract against the consequences of his own negligence. *Housing Authority of Birmingham District v. Morris,* 244 Ala. 557, 14 So.2d 527 (1943); *Smith v. Kennedy,* 43 Ala.App. 554, 195 So.2d 820 (1966), cert. den. 280 Ala. 718, 195 So.2d 829 (1966). This rule is subject to certain exceptions as, for example, where the contract in question involves a lease or easement. *Baker v. Wheeler, Lacey & Brown, Inc.,* 272 Ala. 101, 128 So.2d 721 (1961); *Republic Steel Corp. v. Payne,* 272 Ala. 483, 132 So.2d 581 (1961). Another class of exceptions concerns certain types of indemnity contracts. *Georgia, Florida, Alabama Transportation Co., Inc. v. Deaton, Inc.,* 293 Ala. 371, 304 So.2d 168 (1974). No case has been cited by Kalo, however, that is sufficiently analogous to the present one to bring it within a recognized exception to the general rule. The instant case concerns liability for a latent defect which the retailer Helena could not have discovered without the aid of scientific examination. It is the Court's opinion that this case is most analogous to cases in the area indicated by way of cautionary dicta by the Alabama Supreme Court in upholding the exculpatory clause in a 1973 indemnity case:

"By denying certiorari, we are not to be understood as approving a construction of the indemnity agreement so as to require the indemnitor to indemnify in a situation where the injury is caused in whole or in part by the active, primary negligence of the indemnitee." *Walter L. Crouse & Co. v.*

*Hardy Corp.,* 290 Ala. 134, 274 So.2d 322, 329 (1973).

It is the judgment of this Court that enforcement of the exculpatory clause would be contrary to the public policy of this State in the circumstances of this case. Therefore, the covenant in the contract purporting to exempt Kalo from liability in excess of a return of purchase price is unconscionable.

The Court is mindful that, in determining a part of a contract to be unconscionable, courts must be careful not to create another inequity to replace the one remedied. Such would be the effect of a finding that the exclusion of consequential damages in Kalo's guarantee is unconscionable without a similar finding as to the exclusion in the distributorship contract.

None of the above findings are to be construed as dispositive of an issue other than unconscionability of the aforementioned provisions or as probative of any of the ultimate issues in this cause.

Now, therefore, in consideration of the foregoing, it is the order, judgment and decree of the Court that Plaintiff's motion to strike Kalo's second defense to the complaint herein and the motion of cross-claimant Helena to strike Kalo's second defense to the cross-claim herein be, and the same are hereby, granted. It is the further

Order of this Court that the limitations of remedy to the purchase price of Triple Noctin contained in Kalo's promotional brochure and stamped on Triple Noctin packages and the provisions of Kalo's contract with Helena limiting damages to return of the purchase price of Triple Noctin and requiring any claim to be filed with Kalo within 120 days of receipt of allegedly defective Triple Noctin are unconscionable and that the same will not be applied by the Court to limit such recovery herein as Plaintiff may obtain.