# Alabama Great Southern Ry. Co. v. Demoville.

## Destruction of Property by Fire.

(Decided April 20, 1910.  52 South. 406.)

1. *Railroads; Setting Out Fire; Property on Right of Way; Liability.*—Where the owner of property places it on the right of way of a railroad without the consent of the railroad he becomes a mere trespasser and cannot recover for the destruction of property by fire; but where property is upon the right of way under license from the company, the company will be liable for negligence in destroying it by fire, unless it has contracted for exemptions from such liability.

[Alabama Great Southern Ry. Co. v. Demoville.]

2. *Same; Exemption Contract.*—Where property is placed on the right of way under a contract by which the owner releases the railroad company from liability for damage to the property by fire, the railroad is not liable for negligently destroying the property by fire.

3. *Same; Agreement With Third Person.*—Where there was an agreement between a railroad company and another by which the railroad company was saved harmless from damages from the destruction of a seed house erected on its right of way, the consideration being the privilege of erecting it there, such agreement was not binding upon a party who was not a party to the contract and had no knowledge thereof, and hence would not prevent such party from recovering against the railroad company for the destruction of seed stored therein with the consent of the owner, although the railroad company was not notified that such party was using the seed house.

4. *Same; Evidence.*—Where the action was against a railroad company for damages for the destruction of cotton seed stored in the building on defendant's right of way, and the plaintiff's theory was that the house caught from fire in a car load of cotton loaded by the defendant, evidence that the station agent of the defendant, while superintending the loading of the cotton on the day before the fire, was drunk and went into the car where the cotton was being loaded with his pipe in his hand, was admissible, though no fire was seen in the pipe and no smoke was seen coming therefrom; it was also competent to show that the smell of burning cotton was discovered near such car after it was loaded some ten or twelve hours before breaking into flame which smell led the porter of defendant to search for fire and to show that the odor was stronger where the cars were loaded than elsewhere, as tending to show that the fire was negligently set out by defendant's agent, and that he was negligent in failing to discover and extinguish it.

5. *Same; Instructions; Province of Jury.*—Where the action was against a railroad company for the destruction by fire of cotton seed stored in a house on defendant's right of way and claimed to have been set on fire from a car load of cotton because of the negligence of defendant's agent in going into the car with a lighted pipe in his mouth, a charge asserting that the smoking of a pipe while in close proximity to cotton is not negligence, was an invasion of the province of the jury.

6. *Negligence; Evidence; Proof.*—Negligence may be shown by circumstances and need not be proven by direct and positive evidence.

7. *Charge of Court; Directing Verdict.*—A defendant is not entitled to the affirmative charge where there is sufficient evidence to carry all material questions involved in every count to the jury.

8. *Same; Invading Province of Jury.*—A charge forbidding the jury to infer legitimate and reasonable inferences from facts in evidence is invasive of the jury's province and properly refused.

APPEAL from Greene Circuit Court.

Heard before Hon. S. H. SPROTT.

Action Albartus Demoville against the Alabama Great Southern Railway for damages for the destruction of cotton seed by fire. Judgment for plaintiff the defendant appeals. Affirmed.

A. G. & E. D. SMITH, for appellant. The court should have sustained demurrers to counts 1, 2, 3 and 4 of the complaint. Each of these counts show that the seed house was on the right of way of the defendant.—*Haley v. K. C. & M. R. R. Co.*, 113 Ala. 640; *Prather v. W. W. T. Co.*, 14 A. & E. R. cases, 1; *Hodges v. K. C. M. & B. R. R. Co.*, 43 A. & E. R. R. Cases, 599. It is not averred nor shown that plaintiff had any contract to store his seed in said house, or that he was there by invitation of the defendant, or that he was rightfully in possession of the seed house, and hence, for simple negligence the defendant would not be liable.—*A. G. S. v. Godfrey*, 156 Ala. 202; *McAuley v. T. C. I. & R. R. Co.*, 93 Ala. 356; *Pratt C. & I. Co. v. Davis*, 79 Ala. 308; *A. G. S. v. Lynn*, 103 Ala. 134; *Ensley Ry. Co. v. Chewning*, 93 Ala. 30; *Hodgkins v. Farrington*, 5 L. R. A. 209; 3 Elliott on Railroads, parag. 1235. The court erred in sustaining demurrer to pleas 3, 4 and A.—3 Kent's Comment. 170 and 452; 18 A. & E. Enc. of Law, 1127; *Davis v. Townsend*, 10 Barb. 343; *Cook v. Sterns*, 11 Mass. 537; *Nowlin L. Co. v. Wilson*, 78 N. W. 338; *Hicks Bros. v. Swift Creek Mill Co.*, 133 Ala. 411; *Turner v. City of Mobile*, 135 Ala. 73. An assignment by the Eagle Cotton Oil Company of the license to the plaintiff would work a revocation of the license.—18 A. & E. Enc. of Law, 1143 and authorities there cited. A license is purely a personal privilege and can operate neither for nor against a third person.—18 A. & E. Enc. of Law, 1135 and 1140; 29 Cyc. 452. Such a third person would become a trespasser.—*Riddle v. Brown*, 20

[Alabama Great Southern Ry. Co. v. Demoville.]

Ala. 412. Viewed as a lease the exemption clause was valid and exempted against negligence as well as against accidental destruction of the contents of the seed house.—175 U. S. 91; 24 L. R. A. 647; 29 L. R. A. 751; 112 Ky. 605; 75 S. W. 149; 95 Tex. 477; 77 N. E. 270; 97 N. W. 724; 90 S. W. 626; 79 S. W. 898; 66 S. W. 165; 30 L. R. A. 193; 47 L. R. A. 149; 33 Cyc. 1331. The court erred in excluding the contract.—*Harris v. Basden,* 50 South. 321. Under the facts in this case the defendant was entitled to the affirmative charge.— *Robinson v. Cowan,* 47 South. 1018; *L. & N. v. Reese,* 85 Ala. 497; 29 Cyc. 595; *L. & N. v. Marbury,* 125 Ala. 237; *B. R. L. & P. Co. v. Hinton,* 48 South. 546; *Southern Ry. Co. v. Stewart,* 45 South. 51; *Johnson v. B. R. L. & P. Co.,* 43 South. 33. Counsel discuss other charges refused, but without citation of authority.

HARWOOD & McKINLEY, for appellee. The lower court properly overruled appellant's demurrer to the complaint.—*L. & N. R. R. Co. v. Marbury Lbr. Co.,* 125 Ala. 237; *Ala. Great Sou. R. Co. v. Clark,* 136 Ala. 450; *Ala. Great Sou. R. Co. v. Taylor,* 129 Ala. 238; *Sou. Ry. Co. v. Wilson,* 138 Ala. 510. The lower court properly sustained plaintiff's demurrer to pleas Nos. 3, 4 and "A," which were filed by defendant. The indemnifying contract set up in said pleas whereby the Eagle Cotton Oil Company agreed to save and hold harmless the railroad company from any loss or damage it might sustain by the destruction of the seed-house or its contents—was a matter that did not concern plaintiff (a third party), and such indemnifying agreement was no defense to the action.—*King v. Sou. Pacific Co.,* 29 L. R. A. 755. There was no privity, either of estate or by contract, between the railroad company and the plaintiff—and the plaintiff was not bound by any agreement

made by it with Eagle Cotton Oil Company.—*Simmons v. Feilder*, 46 Ala. 304; *Robinson v. Lehman Durr & Co.*, 72 Ala. 401 (403-4); *Baines v. Wells*, 107 Ala. 571; 18 A. & E. Enc. Law (2nd. Ed.), 682; *Martin v. O'Connor*, 43 Barb. 514; 1 Washburn on Real Prop. p. 516. The evidence in this case being circumstantial, it was proper for the plaintiff (appellee) to show that defendant's agent, while drunk, was seen going amongst the bales of cotton with his pipe in his mouth. It was also competent to prove that the odor of burning cotton was detected in the vicinity of the car shortly after it was sealed up by the defendant; and that defendant's porter went down to see if there was any cotton on fire at the depot, and that the odor of burning cotton was stronger down there than elsewhere.—*A. G. S. R. R. Co. v. Johnston*, 128 Ala. 283; *Mattison v. State*, 55 Ala. 224 (232). The lower court committed no error in excluding from the evidence the contract by which the Eagle Cotton Oil Company agreed to save and hold harmless the railroad company (appellant) from loss or damage which might result from the destruction of said seed-house and its contents by fire.—*Simmons v. Feilder*, 46 Ala. 304; *Robinson v. Lehman, Durr & Co.*, 72 Ala. 401; 18 A. & E. Enc. Law (2nd ed.), 682; 1 Washburn on Real Prop., p. 516; *King v. Sou. Pacific Co.*, 29 L. R. A. 755. The lower court committed no error in refusing to allow appellant to prove that the Eagle Cotton Oil Company did not give it notice of the fact that the plaintiff had been given permission to store his property in said seed-house.—*King v. Sou. Pacific Co.*, 29 L. R. A. 755. The lower court did not err in refusing to give charges No. 1, 2, 3, 4 and 5, requested by appellant.—*L. & N. R. R. Co. v. Lancaster*, 121 Ala. 471; *Chattanooga Sou. v. Daniel*, 122 Ala. 362; *S. & N. Ala. R. R. Co. v. Small*, 70 Ala. 499. The lower court committed no error in

refusing to give charge No. 7, requested by appellant. —18 A. & E. Enc. Law (2nd ed.), 682; *Simmons v. Feilder*, 46 Ala. 304; *Robinson v. Lehman, Durr & Co.*, 72 Ala. 401; *So. Ry. Co. v. Wilson*, 138 Ala. 510.

MAYFIELD, J.—Appellee sued appellant to recover damages for the destruction of a lot of cotton seed. The seed were destroyed by fire which was communicated to the building in which they were stored from the burning cars of cotton left by defendant on its side tracks near the building. The building in which the seed were stored was located on the defendant's right of way, and was built by the Eagle Cotton Seed Oil Company, another corporation, under a written agreement between it and the defendant. This agreement, license, permit, or lease (whatever its name) contained a clause, or clauses, by which the Eagle Company agreed to save the defendant railroad company harmless from all damages which might arise from the destruction or injury of such building or its contents. The negligence relied upon for a recovery was in allowing the cotton in these cars to become ignited, which fire was communicated to, and destroyed, plaintiff's cotton seed. No damages were sought to be recovered for the destruction of the seedhouse in which plaintiff's seed were stored. It is agreed, and conceded, that the building belonged to the Eagle Company, and the seed therein to the plaintiff.

Plaintiff had for some seasons prior to the fire represented the Eagle Company as its purchasing agent at Boligee, and, as such agent, purchased seed for such company, storing same in this seedhouse, for shipment out over the defendant's road. However, during the season in which the fire occurred, he was not so active for the Eagle Company, but was purchasing seed on his own account; and, under an arrangement with the Eagle

Company, he stored his seed in the seedhouse of the company, in consideration of which he gave the Eagle Company the refusal of purchasing the seed from him, and the seed purchased by plaintiff were so stored in this seedhouse, and some were shipped out by the plaintiff over defendant's road. Plaintiff was not shown to have had any knowledge or notice of the agreement or contract between the defendant railroad company and the Eagle Company as to the erection and maintenance of the seedhouse upon the right of way of the former further than such knowledge or notice might be implied by the fact that the seedhouse was upon the right of way of the railroad company.

The two principal questions of difference involved in the trial and on this appeal are: (1) Was any actionable negligence alleged or proven? (2) If so, was the agreement or contract between the Eagle Company and the defendant railroad company binding upon plaintiff, so as to preclude a recovery in this suit?

Many of the questions involved depend upon one or both or these two. These questions (one or both) were raised by demurrer to the complaint, by special pleas and the demurrers thereto, and by the rulings upon the evidence; and by instructions of the court given and refused. The demurrers to the complaint were properly overruled. Each of the counts by comparison appears to be a duplicate of counts heretofore held good by this court in similar actions. Certainly, in legal effect, they are substantial duplicates of approved charges.—*Marbury's Case*, 125 Ala. 237, 28 South. 438, 50 L. R. A. 620; *Clark's Case*, 136 Ala. 450, 34 South. 917; *Taylor's Case*, 129 Ala., 238, 29 South. 673; *Wilson's Case*, 138 Ala. 510, 35 South. 561. It was not necessary under the averments of any of the counts to allege wanton negligence or willful injury. Simple negligence was suffi-

cient. Cases of injury to personalty upon the right of way of a railroad company are different from cases of personal injury to mere licensees. This is certainly true as to the negligent destruction of property by fire under circumstances such as are alleged in this complaint.— Elliott on Railroads, § 1235 et seq., and *Wilson's Case, supra.*

To the complaint the defendant filed pleas of the general issue and several special pleas.

Plea 2 sets up the special·contract before alluded to, between the Eagle Company and the defendant company, as to the erection and maintenance of the seedhouse, containing an indemnity against loss or destruction of such house or its contents by fire or otherwise, and alleged that said contract was transferred by the Eagle Company to the plaintiff, and that plaintiff's possession of such house and the right of storage therein was by virtue of such contract or license, and that the indemnity clause of such contract was therefore binding upon plaintiff.

Pleas 3 and 4 were the same as plea 2, except that they omitted the allegation that the contract of indemnity was transferred or assigned to plaintiff, and that the cotton seed were stored thereunder; but averred that plaintiff used such seedhouse as a mere licensee, and denied any wanton or intentional wrong.

Plea A sets out the contract between the Eagle Cotton Oil Company and the defendant at length as an exhibit. It avers that the seedhouse was erected and maintained under and by virtue of said contract, and that the cotton oil company had used it continuously up to September 28, 1907; that the plaintiff, for several years prior to the fire, had stored said company's seed in said house, as the agent of said company; that on September 28, 1907, without the knowledge or consent of the de-

fendant and its agents, the Eagle Cotton Seed Oil Company gave the plaintiff the right to use the said seedhouse for the storage of his own seed, and that plaintiff, from then to the time of the fire, did so use the said seedhouse without notice to the defendant, and without the knowledge or assent of the defendant or its agents; that the said contract between the Eagle Cotton Seed Oil Company and the defendant, except as affected by the arrangement between the plaintiff and the cotton oil company, remained in full force and effect. This plea also denied subsequent negligence.

The court sustained demurrers to all the special pleas except plea 2, to which a demurrer was overruled; and the trial was had on the general issue and upon special plea 2. The trial court correctly ruled upon these special pleas 3, 4, and A.

The law upon the subject is, we think, correctly stated in 3 Elliott on Railroads, §§ 1235, 1236, as follows:

"Sec. 1235. Property on Right of Way.—It frequently happens that property of third persons located on the railway right of way is destroyed by fire communicated by locomotives of the company using the right of way. In cases of this kind the railway company is sometimes liable and sometimes not. The test of liability is generally whether or not the property situated on the right of way was rightfully there. If the owner of the property is a mere trespasser and placed his property on the right of way without the consent of the railway company, he cannot recover for its negligent destruction by fire. Thus, where a person intruded upon the right of way of a railway company and without the consent of the company erected a building which was afterwards destroyed by fire, it was held that there could be no recovery. But, where a company expressly licenses third persons to erect buildings within the limits of its

[Alabama Great Southern Ry. Co. v. Demoville.]

right of way, it will be liable if it negligently destroys such buildings by fire, unless it has contracted with the persons erecting such building that it shall not be liable if the buildings are destroyed by fire. And where the property is placed on the right of way of a railway company by agreement, either express or implied, and such property is negligently destroyed by fire, the company will be liable. The complaint in an action to recover damages for property burned on the right of way must show that the property was rightfully there.

"Sec. 1236. Contracts Limiting Liability.—As a general rule contracts which seek to confer upon a person immunity from the consequences of his negligent acts to be performed in the future are held void as being contrary to public policy, but there is some conflict among the authorities, and decisions may be found which support a contrary doctrine. Contracts by which railway companies attempt to excuse themselves from liability on account of negligence in the carriage of freight are almost, if not quite, universally held void. And, in the case of the carriage of gratuitous passengers, a provision in the pass on which the person rides that there shall be no liability on account of negligence of the company has been held void, although there are cases maintaining a different rule. So far as we have been able to discover, there are few cases in the books involving the validity of a contract exempting a railway from liability for negligently firing and burning property. We think that ordinarily a contract exempting the company from liability for negligently burning property not on the right of way or premises of the company would be held void. But where property is placed on a railway right of way by virtue of a contract in which the owner releases the railroad company from any and all liability on account of fire, and the property is after-

[Alabama Great Southern Ry. Co. v. Demoville.]

wards destroyed by fire negligently set by the railway company, the contract is not void, and the company cannot be held liable. In such a case, as placing the property upon the right of way is an inconvenience to the company and increases the danger of fire, and as the contract in no way relieves the company from any public duty, it is not against public policy, and is therefore binding upon the parties. Where, however, a railway company leased its property and there was a provision in the lease that the company would not be liable to the lessee for property of his destroyed by fire, it was held that the company was liable to an employe of the lessee who had property which was stored on the leased premises destroyed by fire through the negligence of the railway company."

None of these please alleged any facts to show that this indemnity contract was binding on the plaintiff. It was not alleged that he had any knowledge or notice, actual or constructive, of such provision; nor was it alleged that his use of the seedhouse was wrongful. At most, it was only alleged that he was a mere licensee of the premises. This was sufficient, under the authorities, to render the defendant liable if the seed were destroyed on account of negligence of the defendant as alleged.

Plea 2 was not proven, and hence the correctness of the verdict and judgment must depend upon whether or not any one of the counts was proven, so as to authorize the finding of the jury. It is not contended in this case that the fire was communicated by means of sparks emitted from defendant's engines, nor was there any evidence tending to support such a theory. It is, however, clearly shown that plaintiff's property was burned, and that the fire was communicated to the building in which it was stored from some box cars which were loaded

with cotton in bales, which cars were placed on
a side track near plaintiff's property.  It is also rea-
sonably certain from the evidence that the fire originat-
ed in these bales of cotton thus stored in these cars. This
cotton was loaded onto these cars by defendant's agents
on the day preceding the destruction of plaintiff's prop-
erty, which occurred about 2 o'clock a. m.  After the cot-
ton was thus loaded on these cars, the cars were sealed,
being closed ones; and hence it is not probable that
sparks could have been communicated to the cotton aft-
er the cars were thus sealed.

The plaintiff offered, and had admitted, over the ob-
jection and exception of the defendant, evidence that de-
fendant's depot agent at Boligee, while aiding in or su-
perintending the loading of the cotton onto these cars
on the day preceding the fire, was drunk or intoxicated,
went amongst the bales of cotton, and into the car in
which the cotton was loaded, and after it was loaded,
with his pipe in his mouth, and that the odor of burning
cotton was detected near these cars soon after they were
so loaded and sealed, and that defendant's porter was
caused to thereby search for the fire or burning cotton,
and that the odor of the burning cotton was stronger at
the depot, where these cars were located, than elsewhere.
These were all circumstances tending to show that the
fire was set out by defendant's agents, and that it was
negligently set out, and that defendant's agents  were
guilty of negligence in failing to discover the fire in
time to extinguish it, and to thus prevent the damage
to plaintiff by the spreading of the fire to his property
12 or 14 hours thereafter.  This evidence certainly tend-
ed to show that the bales of cotton caught on fire while
they were being loaded, and before the cars were sealed;
or that they were on fire when so loaded, and that the
defendant's agents were guilty of actionable negligence

in so setting the cotton on fire, or in failing to discover that it was on fire when loaded and before the cars were sealed, and in failing to discover the fire after the cars were loaded. This was the only probable theory as to the origin of the fire. The fire smoldered in these bales of cotton for 12 or 14 hours. Then, kindling into flames and bursting or burning through the cars, it was communicated to plaintiff's property at about 2 o'clock of the morning following the afternoon on which the cotton was loaded. And the drunken condition of defendant's agent, together with the fact that he had a pipe in his mouth at the time he was handling the cotton or superintending the loading of same on the cars, was a circumstance tending to show the negligence complained of, resulting in plaintiff's damage. True, the witnesses who testified to his having the pipe in his mouth did not see any fire in the pipe, nor any smoke from the pipe or from the agents's mouth; but the failure to show that fire was in the pipe did not render the evidence inadmissible.

Had it been shown that there was fire in the pipe, and that smoke and sparks were being emitted from it, the evidence would have been much more convincing to show negligence; but the failure to show any one of these additional evidentiary facts did not render the fact that the agent was drunk at the time of the loading of the cotton and had a pipe in his mouth when handling the cotton inadmissible. It was open to the jury to infer that fire was in the pipe at the time in question, and that it was communicated to the cotton, and that it was so communicated by reason of the drunken condition of defendant's agent who was handling it, and that such acts were actionable negligence as alleged. It was likewise open to the jury to infer from this and other evidence in the case that but for the drunken condition

[Alabama Great Southern Ry. Co. v. Demoville.]

of this agent while handling the cotton, and but for the
fact that he had a pipe while drunk and while so hand-
ling the cotton, the fire would not have occurred; and
that, if it did so occur on this account, it was actionable
negligence.   It was likewise open for the jury to infer
that but for the drunken condition of this agent the fire
would have been discovered sooner, and the spreading
to plaintiff's property have been prevented.   But for the
drunken condition of this agent the fire might have been
discovered when the odor of burning cotton was detect-
ed—which was eight or ten hours before the fire broke
out.   It was open to the jury to infer this from all the
evidence, and also to infer that the fire was at that time
smoldering in the bales of cotton, and that a reasonable
inspection of the cars or premises would have discover-
ed the fire, and thus admitted of its being extinguished,
to the preservation of plaintiff's property.   If the fire
did not originate and occur on account of the negligence
of the defendant's agent in the manner in which the
evidence of plaintiff tended to establish, it is difficult
to conceive any reasonable cause.   This evidence, in con-
nection with other undisputed facts in the case, we think
authorized the inference that the fire  originated  or
spread on account of the actionable negligence of de-
fendant's agent, and that the defendant was answera-
ble for such negligence of its agent.

While the fact that the agent was drunk when the cot-
ton was being loaded into the car or the fact that he had
a pipe in his mouth while he was working with the cot-
ton, or the fact that the odor of burning cotton was de-
tected soon after these acts of the agent and eight or ten
hours before the fire broke out of the cars and was com-
municated to plaintiff's property, standing alone, would
not be sufficient to justify the verdict against the defend-
ant, yet each circumstance was competent and admissi-

20—167

ble, and, when all are considered together and in connection with all the other evidence, we are not prepared to say that the evidence was insufficient to support the verdict. The fire occurring in the nighttime, as it did, and originating among the bales of cotton, closed as they were in the car, the evidence to prove how the cotton was first ignited would almost of necessity depend upon circumstantial evidence. This court has several times held that such evidence may be sufficient to prove the origin of the fire and the negligence of the defendant in setting it out.—*Johnston's Case,* 128 Ala. 283, 29 South. 771; *Malone's Case,* 109 Ala. 509, 20 South. 33; Elliott on Railroads, § 1243. The court having limited the evidence as to the drunkenness of the agent and his having a pipe in his mouth to the time during which he was engaged in handling and loading the cotton which caught on fire, there was clearly no error in its admission.—Wigmore on Ev. § 85, and notes. The rule is thus stated in 1 Shearman & Redfield on Negligence, § 58: "The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence sufficient to rebut this presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's fault; but this is going too far. If the facts proved make it probable that the defendant violated his duty, it is for the jury to decide whether he did so or not. To hold otherwise would be to deny the value of circumstantial evidence. As already stated, the plaintiff is not bound to prove his case beyond a reasonable doubt; and, although the facts shown must be more consistent with the negligence of the defendant than with the absence of it, they need not be inconsistent with

any other hypothesis. It is well settled that evidence of negligence need not be direct and positive. Circumstantial evidence is sufficient. In the nature of the case the plaintiff must labor under difficulties in proving the fact of negligence; and, as that fact itself is always a relative one, it is susceptible of proof by evidence of circumstances bearing more or less directly upon the fact of negligence, a kind of evidence which might not be satisfactory in other classes of cases, open to clearer proof. This is on the general principle of the law of evidence, which holds that to be sufficient or satisfactory evidence which satisfies an unprejudiced mind. Proof that similar accidents do not happen from similar things, when properly managed, is competent to raise a presumption of negligence, where an accident has happened."

It may be true, as contended by appellant, that the burden of proof and the presumptions of negligence are somewhat different in cases in which property is fired directly by sparks emitted from engines from cases like the one under consideration, in which the fire spread from other property on fire upon the right of way of the railroad company. Elliott on Railroads, § 1242, contains the following statement of the rules in the two cases: "Where a fire is caused by inflammable material on the right of way or by fire spreading from the right of way, the authorities are pretty well agreed that the burden of proving negligence rests upon the plaintiff. In such cases, it is but just that the burden should rest upon the plaintiff, for the means of proof are as equally available to the plaintiff as to the defendant. The gist of such action in such cases is negligence in suffering the fire to escape, and the burden in showing negligence in that respect rests upon the plaintiff. But where a fire is set directly by sparks from a locomotive,

and the action is predicated on negligence of the company in using a locomotive with defective apparatus or equipments or in negligently and unskillfully managing a locomotive, the authorities are in direct conflict as to who has the burden of proof." Shearman & Redfield on Negligence, § 676, states the rule as to the burden of proof as follows: "The decided weight of authority and of reason is in favor of holding that, the origin of the fire being fixed upon the railroad company, it is presumptively chargeable with negligence, and must assume the burden of proving that it had used all those precautions for confining sparks or cinders (as the case may be), which have been already mentioned as necessary. This is the common law of England, and the same rule has been followed in the federal courts and in the state courts. * * *" The evidence in this case having conclusively shown that the fire originated in the box car loaded with cotton, which was on defendant's right of way and side track, and that it was not probable that it was fired by any other means than the negligence of defendant's agents, and there being sufficient circumstantial evidence from which the jury could infer such negligence on the part of defendant's agent, we hold that there was sufficient evidence to carry the case to the jury and to support the verdict rendered. It is matter of common knowledge that fire in bales of cotton which are well packed burns very slowly, and that it may so burn for a long time before blazing, and that, while so burning, it gives out an odor like that of rags or cloth burning, and that fire in bales of cotton may be detected by this odor long before there is any other evidence of the fire, unless it should be small quantities of smoke. The evidence, therefore, that this odor was detected and the attention of defendant's agents called to it was admissi-

ble, though this happened eight or ten hours before the cotton in the cars blazed up, or was discovered by the plaintiff.

The contract or agreement between the defendant and the Eagle Company, by which the latter agreed to indemnify the former, or to save it harmless against all damages on account of the destruction of the seed-house or its contents, in consideration of the privilege of erecting such house on defendant's right of way, was not relevant or material evidence on this trial. It was not shown that plaintiff was a party or privy to the contract, and it was shown that he had no knowledge or notice of it prior to the loss sustained. The mere fact that he had the permission or consent of the Eagle Company to store his seed in the house did not render him liable to the provisions of this contract. The contract on its face did not purport to bind the plaintiff or any one except the parties to it, and plaintiff was conclusively shown not to have had any knowledge or notice thereof. The mere facts that the house was on the right of way of the defendant, and that plaintiff had placed his seed therein without the knowledge or consent of the defendant, did not and could not defeat or prevent plaintiff's right of action, if it otherwise existed. Plaintiff was shown to have obtained the consent to so store his seed from the proper party—the Eagle Company. It was not shown that defendant had ever attempted to control the use to which the building should be put. Moreover, it is shown that it was being used for the express purpose for which it was built. It could be no defense of justification in this action that the seedhouse was erected and maintained on defendant's right of way under the contract in question. As before stated, the plaintiff was not a party or privy to it, and was not bound by it. It was not necessary for the plaintiff to

show that the Eagle Company had notified defendant of his use of this property. The contract did not so provide; and, had it done so, it was shown that plaintiff had no knowledge or notice of the contract.

All the charges which were in effect the general affirmative charge for defendant, as to any one or more of the counts, were properly refused for the reasons that there was sufficient evidence to carry all material questions to the jury as to each count, and that the defendant had failed to prove its special plea numbered 2.

Charge 7 was properly refused. The fact that plaintiff used the seedhouse as a licensee of the defendant if the jury had or could have so found would not have authorized a verdict for defendant. The charge in effect was that, if plaintiff was so occupying the seedhouse, he could not recover. As we have shown above, this is not the law.

It was not necessary for plaintiff to have had the permission of the defendant to so use the seedhouse in question, in order to render the defendant liable; nor was the fact that he so used it without defendant's knowledge or consent a bar to his right to recover, if otherwise he was entitled to recover. For this reason, charge 8 was properly refused.

Charge 11 assumes as matter of law that smoking a pipe while in close proximity to cotton is not negligence. It might or might not be, depending upon other attending circumstances. The charge invaded the province of the jury, and had a tendency to mislead them, and for these reasons was properly refused. A charge which denies to the jury the right to infer legitimate and reasonable facts from other facts proven is properly refused. It was, as we have before stated, a question for the jury to say whether or not the smoking of a pipe under the circumstances was negligence.

[Alabama Great Southern Railway Co. v. Norris.]

Finding no error in the record, the judgment must be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.