On this appeal we decide whether a contract which relieves a party from the consequences of its own negligence is enforceable. Judgment in favor of Sumter Plywood Corporation, plaintiff below, and against Alabama Great Southern Railroad Company, defendant below, in the amount of $21,798.31 was entered upon stipulated facts. We affirm.
The facts, as stipulated and submitted to the trial court by the parties, are:
 "1. That attached hereto and marked `Exhibit A' is a true and correct copy of an agreement entered into by and between the Alabama Great Southern Railroad Company, as party of the first part, and the Industrial Development Board of the Town of Livingston, as party of the second part, on, to-wit, 25 January 1972.
 "2. That attached hereto and marked `Exhibit B' is a true and correct copy of an agreement entered into by the defendant, Alabama Great Southern Railroad Company as `Railroad'; Industrial Development Board of the Town of Livingston as `Industry'; and plaintiff, Sumter Plywood Corporation as `Shipper', dated on, to-wit, 26 January 1972. That Exhibit A constitutes the agreement referred to in the first paragraph of Exhibit B, being the agreement and instrument thereafter referred to as `Agreement' in Exhibit B.
 "3. That defendant, Alabama Great Southern Railroad Company, required the Industrial Development Board of the Town of Livingston to execute Exhibit A and the Industrial Development Board of the Town of Livingston and Sumter Plywood Corporation to execute Exhibit B as a condition to the agreement of the Alabama Great Southern Railroad to afford the terminal services and facilities referred to in said agreement and to furnish such terminal services and facilities elsewhere than at the regular station of Railroad. The spur on which this incident occurred was an extension of a lead line in the South Industrial Park of Livingston, Alabama. The lead line was owned by the Defendant and the spur by Sumter Plywood Corporation.
 "4. That the suit in this case claims damages based on the alleged negligent or wanton damage by Railroad of the overhead chip-bin loader referred to in paragraph 2 of Exhibit A and that the *Page 1141 
property for which Plaintiff seeks to recover damages is one of the `facilities' referred to in said agreement and the accident involved arose out of the use of such facility.
 "5. That the agreements attached hereto and marked `Exhibit A' and `Exhibit B' were in full force and effect on, to-wit, 1 September 1975, the date of the accident made the basis of the suit filed herein and such accident is subject to the terms of said agreement insofar as said agreement may be deemed to be valid and enforceable.
 "6. That there is no evidence of any wanton act or misconduct on the part of the defendant or its agents, servants, or employees.
 "7. That the accident in question occurred on 1 September, 1975, which was a Labor Day holiday and plaintiff's mill was not in operation and none of plaintiff's employees were present at the time of said accident. The accident occurred when defendant's employees connected a train to a partially filled railroad car located under the aforesaid overhead chip-bin loader and moved said car without observing that said car was attached to a cable and winch used to move said car into position under the chip-bin loader. The moving of such car caused the cable to remove the legs supporting the chip-bin loader which overturned causing the damage claimed."
An additional stipulation reads:
 "1. The plaintiff and defendant hereby agree, admit and stipulate to all of the matters and facts contained in the stipulation heretofore made in this case for the purpose of a Motion for Summary Judgment filed by the defendant, Alabama Great Southern Railroad Company, said stipulation being dated 22 October 1976, said stipulation to have the same force and effect as the other matters stipulated hereinafter and fully and to the same extent as if the same were set forth herein at length.
 "2. That the damages sustained by the plaintiff as a result of the accident made the subject of this suit was the sum of Twenty One Thousand, Seven Hundred Ninety Eight and 31/100 ($21,798.31) Dollars.
 "3. That the defendant, Alabama Great Southern Railroad Company, was guilty of simple negligence which proximately caused the accident made the subject of this suit and the damages stipulated to above.
 "4. The plaintiff, Sumter Plywood Corporation, and the defendant, Alabama Great Southern Railroad Company, hereby submit this case for final judgment upon the stipulations made herein together with the stipulations referred to above dated 22 October 1976, together with the briefs heretofore filed by said parties."
Exhibits "A" and "B" referred to in the stipulation read:
AP EXHIBIT "A"
"THIS AGREEMENT, made between
"THE ALABAMA GREAT SOUTHERN RAILROAD COMPANY, an Alabama corporation, its successors and assigns, hereinafter styled Railroad, party of the first part; and,
"INDUSTRIAL DEVELOPMENT BOARD OF THE TOWN OF LIVINGSTON, Alabama, hereinafter styled Industry, party of the second part;
 "WITNESSETH:
"THAT the PARTIES HERETO agree as follows:
"1. Railroad will operate, to afford Industry facilities for the receipt and shipment of carload freights of Industry over the lines of Railroad in accordance with lawfully published tariffs, three (3) industrial tracks, known and designated as Tracks 1, 2 and 3 (hereinafter together sometimes styled tracks) at LIVINGSTON, Alabama, the locations of said tracks being substantially as shown in red and green on print of Drawing No. F-148, dated June 3, 1971, annexed hereto and made a part hereof. *Page 1142 
"2. Railroad hereby consents to (i) the construction and maintenance by Industry of two rolling steel doors across said Track 2 at the locations where said industrial track enters and leaves the building of Industry; and (ii) the construction and maintenance by Industry of an overhead chip-blower pipe loader and overhead chip-bin loader (together hereinafter styled `Facilities') over said Tracks 1 and 2 at the locations shown on said print.
"3. Industry will acquire and hereby guarantees to Railroad full right and lawful authority to maintain and operate any portion of said industrial tracks which may be located beyond the limits of the right of way of Railroad, or upon or across any public highway and will, moreover, whenever requested by Railroad so to do and without cost to Railroad, vest or cause to be vested in Railroad, by good and sufficient deed in form to be approved by Railroad, a good marketable title, free from encumbrances, to such easement or right of way over and upon land located beyond the southwesterly boundary of Railroad's present main line right of way as may be required by railroad for the maintenance and operation of those portions of said tracks.
"4. Title to those portions of said tracks located as shown in green on said print are vested in Industry, and title to those portions of said tracks located as shown in red on said print are vested in Railroad. Railroad shall have entire control of said tracks and the operation thereof, and may use the same as well for the business of third persons, not parties hereto, as for that of Industry; provided that such use of said portions of track owned by Industry, as aforesaid, for the benefit of third persons shall not unreasonably interfere with the business of Industry.
"5. Industry will, at the cost and expense of Industry, maintain said portions of track located as shown in green on said print, owned by Industry, as aforesaid, in good condition and repair and in all respects in accordance with the reasonable requirements of Railroad looking to the safe and convenient operation of engines and cars on said tracks; it being understood that Railroad will maintain said portions of said tracks located as shown in red on said print and owned by Railroad as aforesaid. If Railroad or Industry shall elect that Railroad shall furnish materials and perform the work of maintenance of the portions of said tracks, chargeable to Industry, as aforesaid, Railroad will maintain the same for account of Industry, provided Industry shall pay in advance to Railroad the cost of such maintenance, from time to time, as required.
"6. Industry agrees, except as to existing structures, to observe and be bound by the rules of Railroad for standard clearance, that is to say, an overhead space of 22 feet measured perpendicularly from the top of the rail (except that overhead clearance where wire lines extend over said tracks shall be such as may be prescribed by Railroad) and a space 20 feet in width, measured 10 feet on each side from center line of each of said tracks, shall be kept clear of any obstruction, and all structures, facilities or property of Industry above or parallel to said tracks shall be safely and substantially maintained by Industry to preserve said clearances; PROVIDED, however, that as to existing structures where standard clearances do not obtain, Industry, shall place and maintain warning signs, satisfactory to Railroad, at conspicuous places on such structures to the effect that such structures will not clear man on side of car, or on top of car, as the case may be.
"7. Industry will construct and maintain, at its own cost, said doors across said industrial track at the locations indicated on said annexed print; said doors to be constructed in such manner as to provide when opened an unobstructed space above and on either side of the center line of each of said tracks of not less than the distances shown marked on said annexed print. Industry shall provide a substantial device to which each of said doors may be fastened and made stationary when railroad equipment is moving through the doorways; said device to be so arranged that when said door is *Page 1143 
fastened thereto the distance between door and the center line of each of said tracks will at no point be less than the distances shown on said annexed prints.
"8. Industry will assume full responsibility for the safe and proper maintenance and use of said doors and facilities and will indemnify and save harmless Railroad, and any associated, controlled or affiliated corporation from and against the consequences of any property loss or damage, death or personal injury whatever accruing from or by reason of the construction, maintenance or use of said doors and facilities, or by reason of the presence of the same across or above said tracks, or which may result from or be attributable to any restricted clearances for said industrial tracks, whether or not negligence of Railroad may have caused or contributed to such loss, injury or death.
"9. Industry will indemnify and save harmless Railroad, and any associated, controlled, or affiliated corporation, from and against all damages resulting from negligence of Industry or the servants and employees of Industry, in and about said tracks and the rights of way therefor, and from and against all claims for loss or damage by fire communicated by locomotives or trains of Railroad to buildings or structures (including contents) used by Industry or the tenants of Industry, in connection with the business served by said tracks, or to other property stored by or with the consent of Industry upon or near said tracks. Railroad stipulates for this protection as a condition of its agreement to afford terminal services and facilities to Industry elsewhere than at the regular station of Railroad.
"10. All carload shipments consigned to Industry for delivery on said industrial tracks shall be deemed to have been fully and completely delivered as soon as the car containing such shipment shall have been placed on the tracks and detached from the engine or train by which it was moved. Railroad shall not be liable as common carrier, nor as bailee, for any property loaded into any car on said tracks until said car is attached or coupled to the engine or train by which it is to be moved from said tracks towards its destination, or until a bill of lading shall have been issued therefor, and until said car is so attached or coupled up, or a bill of lading is issued therefor, the said car and its contents shall be deemed and held to be in the possession of Industry so far as liability therefor is concerned.
"11. The provisions of this agreement shall inure to the benefit of and shall be binding upon, any other railroad company now operating or which may hereafter operate over or upon the tracks covered by this agreement. This contract is not assignable or transferable by Industry except with the written consent of Railroad, signed by an executive officer.
"12. Notwithstanding any other provision hereof, Industry agrees to comply entirely at its own expense with all requirements imposed by any governmental agency, state, federal, or local, with respect to clearances, walkways, specification and condition or maintenance of the tracks and portions of said tracks which are owned or maintained by Industry.
"13. This agreement shall be effective as of September 3, 1971. Either party hereto may terminate this agreement by 60 days' written notice to the other. Upon the expiration of such notice this agreement shall terminate whereupon Railroad may discontinue the operation of said tracks and remove any property of Railroad therefrom. Notwithstanding any other provision hereof, if Industry shall fail to maintain said tracks or portions of said tracks, which it herein agrees to maintain, or if Industry shall fail to observe proper clearances for said tracks as herein agreed by Industry, of if Industry shall fail to perform any of its covenants in this agreement contained, Railroad shall have the right forthwith to discontinue operation of said tracks, without liability to Industry, until said tracks are placed in proper condition for operation of proper clearances are effected, or such covenants performed.
IN WITNESS WHEREOF, the parties hereto have executed this agreement in duplicate, each part being an original, as of January 25th, 1972." *Page 1144 
AP EXHIBIT "B"
"THIS SUPPLEMENTAL AGREEMENT, made between
"THE ALABAMA GREAT SOUTHERN RAILROAD COMPANY, an Alabama corporation, its successors and assigns hereinafter called Railroad;
"INDUSTRIAL DEVELOPMENT BOARD OF THE TOWN OF LIVINGSTON, Alabama, hereinafter called Industry; and
"SUMTER PLYWOOD CORPORATION, hereinafter called Shipper:
"WITNESSETH: That
"WHEREAS, an agreement was entered into between Railroad and Industry dated January 25, 1972 (hereinafter called Agreement), concerning operation of 3 tracks at LIVINGSTON, Alabama, as described in said Agreement, and
"WHEREAS, Shipper desires to have said tracks operated for the receipt and shipment of freights in connection with the business of Shipper, and Railroad and Industry are willing to permit such use of said track;
"NOW, THEREFORE, the parties hereto agree as follows:
"(1) Industry agrees that said tracks may be operated by Railroad for the receipt and shipment of freights in connection with the business of Shipper upon the terms and conditions and subject to the covenants and agreements in said Agreement contained, said Agreement being hereby made part hereof by reference.
"(2) Railroad agrees to operate tracks for the purpose of affording unto Shipper facilities for the receipt and shipment of carload freights of Shipper over the lines of Railroad in accordance with lawfully published tariffs upon the express condition that Shipper shall be bound by and shall carry out and perform all of the terms and conditions of said Agreement insofar as the same may be applicable or may be made applicable, the same as if Shipper had executed said Agreement, and Shipper, hereby acknowledging receipt of a copy of said Agreement, hereby agrees to carry out and perform all of such covenants, conditions and provisions of said Agreement.
"(3) This supplement shall become effective as of the 3rd day of September, 1971, and shall continue in force until terminated by any party hereto by 30 days' written notice to the other parties of election to cancel the same, whereupon this supplement shall terminate at the expiration of the period specified in such notice, provided, however, that in no event shall this supplement continue in force after the termination of said Agreement.
"(4) This supplement modifies said Agreement as herein provided, but no further, and said Agreement as herein supplemented shall remain in full force and effect until terminated in accordance with its terms.
"EXECUTED as of the 26th day of January, 1972."
Upon these stipulations, the trial court found:
"1. That the Defendant is guilty of negligence which proximately caused property damage to the Plaintiff.
"2. That the release made and entered into between the parties prior to the negligent act of the Defendant which released the said Defendant railroad company, a corporation which was engaged in public service, from liability for damages for its own negligent acts is unenforceable and void as a matter of public policy where such public carrier provided services in an industrial park where it had previously constructed and owned a leadline established for the purpose or providing such service to such industrial park.
"3. That the indemnity clause contained in the agreement between Plaintiff and Defendant did not evidence an intent on the part of the parties to indemnify the Defendant against its own negligence.
"4. The Court finds that the parties did not contemplate, as a part of the pre-release and indemnity agreement, that the railroad would commit a negligent act and do damage to the property of the Plaintiff *Page 1145 
on Labor Day, a day when said Plaintiff's plywood mill was not in operation and none of plaintiff's employees were present or on the scene or available to assume responsibility for the safe and proper use of the facilities so damaged.
"5. That the Plaintiff have and recover of the Defendant the sum of TWENTY ONE THOUSAND SEVEN HUNDRED NINETY EIGHT AND .31/100's ($21,798.31) DOLLARS together with the costs in this behalf expended for which let execution issue."
From the entry of this judgment, AGS perfected this appeal.
The decisive issue for review is the validity and enforceability of the indemnification provision (or exculpatory clause) in paragraph 8 of the agreement between AGS and the Industrial Development Board of the Town of Livingston, set forth above in Exhibit A, to which Sumter Plywood later agreed to be bound.
We hold the provision invalid and unenforceable.
Our conclusion is based on the general rule in this state that a party may not contract against the consequences of his own negligence. Housing Authority of Birmingham District v.Morris, 244 Ala. 557, 14 So.2d 527 (1943); Smith v. Kennedy,43 Ala. App. 554, 195 So.2d 820 (1966), cert. den. 280 Ala. 718,195 So.2d 829 (1966).
The reason for the rule was aptly stated in Housing Authorityof Birmingham District v. Morris, supra:
 "* * * it is a well recognized general principle, founded on human experience, that, `Agreements exempting persons from liability for negligence induces a want of care, for the highest incentives to the exercise of due care rest in consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from the cause. It has therefore been declared to be a good doctrine that no person may contract against his own negligence. * * *.' * * *"
Stated differently, as between the contracting parties, the provisions of a contract which would exempt one of the parties from the consequences of its own negligence is void as against public policy for the reasons that such a provision would foster negligence in the performance of a contract and not deter it.
We are fully aware, as AGS reminds us, that this court has recognized an exception to the general rule. For example, the court has held exculpatory clauses and indemnity provisions valid, where the contract in question involved a lease or easement. See Baker v. Wheeler, Lacy Brown, Inc., 272 Ala. 101, 128 So.2d 721 (1961) [lease, tenant]; Republic Steel Corp.v. Payne, 272 Ala. 483, 132 So.2d 581 (1961) [deed, easement]; and Georgia, Florida, Alabama Transportation Co., Inc. v.Deaton, Inc., 293 Ala. 371, 304 So.2d 168 (1974) [equipment lease]. With reference to railroads, this court has upheld clauses in agreements between railroad companies and their license (or lessees) which exempted railroads from liability due to fire damage caused by train sparks. See Alabama GreatSouthern Railway Co. v. Demonville, 167 Ala. 292, 52 So. 406
(1910), and McKinney v. Mobile O.R. Co., 215 Ala. 101,109 So. 752 (1926). In these situations, the contracts (or agreements) in question involved Leases or other incidents to ownership of land by the railroad; such as a lease by a railroad company of a part of its right-of-way for the erection of a warehouse. The rationale employed to sustain the exculpatory stipulations in those instances is that the agreements are essentially private covenants in which the public has no interest and the enforcement of which will in no way be injurious to the public.
In brief, AGS intimates the instant action is sufficiently analogous to the above cited cases to bring it within this exception to the general rule that a party may not contract against the consequences of his own negligence. We disagree.
We find the present case distinguishable on this salient fact: the agreement between AGS, the Industrial Development *Page 1146 
Board and Sumter Plywood was not incident to an ownership of land by AGS; by lease or otherwise. The damaged chip-bin loader was on property obtained by Sumter Plywood pursuant to a lease-purchase agreement with the Industrial Development Board, not AGS.
Furthermore, to uphold the indemnity provision of the agreement in this action would surely tend to induce a want of care on the part of AGS which is clearly against the public policy of this state.
Holding as we do that this action is not within the exception to the general rule enunciated above, there is no need to address AGS's contention that the indemnity provision is valid because it expressly provides for Sumter Plywood to indemnify AGS against loss whether or not the negligence of AGS may have caused or contributed to such loss.
The judgment of the trial court is due to be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.