534 So.2d 592 (1988)
CITY OF MONTGOMERY
v.
JYD INTERNATIONAL, INC.
No. 87-175.
Supreme Court of Alabama.
September 23, 1988.
Rehearing Denied November 18, 1988.
F. Chadwick Morriss of Rushton, Stakely, Johnston & Garrett and Robert J. Russell, Jr., City Atty., Montgomery, for appellant.
Joana S. Ellis of Ball, Ball, Duke & Mathews, Montgomery, for appellee.
TORBERT, Chief Justice.
Appeal by the City of Montgomery ("Montgomery") from a summary judgment in favor of JYD International, Inc. ("JYD"). We affirm.
Both Montgomery and JYD were named defendants in a personal injury action filed by L.T. and Lillian Farris. Their complaint alleged that Mrs. Farris was injured when she slipped and fell inside the Montgomery Civic Center, and that both defendants were guilty of negligence and wanton conduct in failing to remedy a hazard on the civic center's floor. L.T. sued for loss of consortium. At the time of the accident, *593 Mrs. Farris was employed by JYD, a tenant of the Montgomery Civic Center, as a temporary cash register operator. JYD, a merchandiser of oriental rugs, was occupying certain space in the civic center under a lease that contained, among other things, indemnity clauses that are in issue here.
JYD had leased the "River Room," and Mrs. Farris was to perform her duties there. On the day of the accident, Mrs. Farris entered the civic center, not from the two primary entrances, but from a service entrance at the rear of the civic center. She took a "short-cut" through the grand ballroom, and, as she crossed in front of the stage there, she slipped on an oily substance and fell, fracturing an arm. This action ensued.
Montgomery cross-claimed against JYD, demanding indemnification for any damages for which Montgomery would be held responsible as a result of Mrs. Farris's injuries. Thereafter, JYD moved for summary judgment on the Farrises' underlying tort claims. This motion was granted.
The Farrises' case against Montgomery was set for trial; however, before trial began, the cause was settled and dismissed.
Following the settlement, both Montgomery and JYD moved for summary judgment on the cross-claim. After consideration, the trial court granted summary judgment in favor of JYD, with the order citing this Court's decision in Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala.1983). Montgomery's post-trial motion was denied, hence this appeal.
The indemnity provisions on which Montgomery relies for its recovery are contained in the lease between Montgomery and JYD. After describing the premises leased as the "River Room," to be used for the purpose of a rug sale, the lease provided:
"E. INSURANCE.
"By the acceptance of this agreement Lessee covenants to indemnify, save and keep free and harmless the City of Montgomery, its officers and employees, from and against any and all claims, demands, loss, liability, cost, or expense of any kind of nature whatsoever which the City, its officers or employees, or any of them, may sustain or incur, or that may be imposed upon them, or any damages to property arising out of, connected with or attributable to the use and occupancy of the facility by Lessee....

". . .
"G. THE LESSEE HEREBY PROMISES AND AGREES:
". . .
"7. To save the City of Montgomery and the Civic Center harmless and to indemnify them against any claims or liability arising or resulting from any injury to any visitor, spectator or participant in any activity in any part or portion of the Civic Center, regardless of entrance gained to said Civic Center by paid admissions, by pass issued by Lessee or Lessor or by any unlawful admission gained without knowledge of Lessor or Lessee.
". . .
"I. IT IS FURTHER MUTUALLY AGREED BY AND BETWEEN THE PARTIES HERETO:
". . .
"3. That the Lessor shall not be responsible for any damages or injury that may happen to the Lessee, or the Lessee's agents, servants, employees or property from any cause whatsoever, prior, during or subsequent to the period covered by this lease; and the said Lessee hereby expressly releases said Lessor from, and agrees to indemnify it against any and all claims for such loss, damage or injury." (Emphasis added.)
The propriety of the summary judgment in favor of JYD on the Farrises' underlying tort claims is not contested here. Therefore, the dispositive question becomes whether JYD must indemnify the City pursuant to the agreement at issue for the City's negligence in connection with an incident that took place not within the leased area.
*594 Agreements by which one party agrees to indemnify another for the consequences of the other's acts or omissions are carefully scrutinized. Agreements that purport to indemnify another for the other's intentional conduct are void as a matter of public policy. Pruet v. Dugger-Holmes & Associates, 276 Ala. 403, 162 So.2d 613 (1964). An agreement by one person to indemnify another for the other's negligent conduct is enforceable only if the indemnity provisions are unambiguous and unequivocal. Industrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala.1980), cert. denied, 449 U.S. 1081, 101 S.Ct. 864, 66 L.Ed.2d 805 (1981). The strong policy arguments against such agreements were stated in Housing Authority of Birmingham District v. Morris, 244 Ala. 557, 563, 14 So.2d 527, 531 (1943):
"[I]t is a well recognized general principle, founded on human experience, that, `Agreements exempting persons from liability for negligence induce a want of care, for the highest incentives to the exercise of due care rest in consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from the cause. It has therefore been declared to be a good doctrine that no person may contract against his own negligence. * * *'"
In Industrial Tile we rejected the rule of no indemnification for the indemnitee's own negligence:
"The Court's insistence that such provisions be unambiguous and unequivocal arises from its concern that, generally speaking, one should not be able to contract against the consequences of his own wrong. However, as stated in 41 Am.Jur.2d, Indemnity, § 9 (1968), the general rule seems to be:
"`Broadly speaking, a promise of indemnity for the performance of an act not illegal, immoral, or against public policy is valid. Thus, indemnity against loss on account of a business transaction is proper. And, although there is some earlier authority to the contrary, it is now the prevailing rule that a contract may validly provide for the indemnification of one against, or relieve him from liability for, his own future acts of negligence provided the indemnity against such negligence is made unequivocally clear in the contract.'
"Section 15 [Am.Jur.]:
"`A contract of indemnity purporting or claimed to relieve one from the consequences of his failure to exercise ordinary care must be strictly construed. Accordingly, it is frequently stated as the general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it.'
"Alabama has generally followed these general rules when construing contracts between private parties, as distinguished from corporations performing a public service. American District Telegraph Company of Alabama v. Roberts & Son, Inc., 219 Ala. 595, 122 So. 837 (1929).
"Industrial Tile argues that Alabama, in 1978, in Alabama Great Southern Railroad Co. v. Sumter Plywood Corp., 359 So.2d 1140 (Ala. 1978), rejected the general rule and now follows the rule that, as between private parties, any contract which permits the indemnification of the indemnitee against his own wrongs is void as against public policy. We agree that there is language in the opinion which supports Industrial Tile's contentions. However, after carefully reviewing all of the authority in this state, we are compelled to conclude that, if the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld. To the extent that Alabama Great Southern Railroad Co. v. Sumter Plywood Corp., *595 supra, holds otherwise, it is hereby modified."
388 So.2d at 176.
While the per se elimination of indemnity was rejected in Industrial Tile, Inc. v. Stewart, supra, it was rejected by way of an implicit balancing of the interests served by tort law and the interests served by contract law. The tort law incentive to exercise due care could be shifted to the indemnitor through a negotiated contract but only if the indemnitor was clearly aware of his obligation and therefore was at least given the opportunity to attempt to monitor the activities of those whom he indemnified. While the tort law incentive is clearly less effective if the actual actor is not required to shoulder the burden associated with his actions, at least some safety incentive theoretically exists in, and can be acted on by, the indemnitor.
Assuming, without deciding, that the language employed unequivocally and unambiguously expressed the intent to indemnify Montgomery against its own negligence, we are still confronted with the question of whether as a matter of public policy such a contract can be enforced with respect to injuries that occur outside of the immediate area of the leased premises.
In Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala. 1983), we noted that the degree of control retained by the indemnitee over the activity or property giving rise to liability is a relevant consideration. This is true because the smaller the degree of control retained by the indemnitee, the more reasonable it is for the indemnitor, who has control, to bear the full burden of responsibility for injuries that occur in that area. However, the opposite is also true: The more control the indemnitee retains over the area, the less reasonable it is for the indemnitor to bear the responsibility for injuries that occur in that area. In this case, the mishap took place in an area not within the actual leased area and, for all that appears from the record, an area in which the lessee (the indemnitor) had no right of control. To allow the indemnitee to transfer financial responsibility to the indemnitor under such circumstances would be totally at odds with the tort system's incentives to encourage safety measures. See Industrial Tile, Inc., supra (Jones, J., dissenting). Any argument that the agreement simply shifts the burden to the indemnitor to take such measures is untenable if the indemnitor has no right to exercise control over the potentially hazardous area or activity. Taken to its extreme, the agreement in this case could cast upon the lessee the responsibility for accidents that occur due to defects in sidewalks or parking lots at the civic center. Arguably, the language in paragraph E is so broad as to encompass injuries resulting from Montgomery's failure to properly maintain the streets by which people traveled to the civic center.
We hold that the agreement by which the indemnitee attempts to obtain indemnity for its own negligence, under these circumstances, is void as against public policy.
AFFIRMED.
JONES, ALMON, SHORES and ADAMS, JJ., concur.
MADDOX, BEATTY, HOUSTON and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
As I read the majority opinion, it is bottomed on the finding that the indemnitor in this case did not have control of the premises where the accident happened, and, therefore, that the contract of indemnity is void and unenforceable. The majority rule in this country is that "[b]roadly speaking, a promise of indemnity for the performance of an act not illegal, immoral, or against public policy is valid." Industrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala.1980), cert. den., 449 U.S. 1081, 101 S.Ct. 864, 66 L.Ed.2d 805 (1981), quoting from 41 Am.Jur.2d Indemnity, § 9 (1968).
The majority makes a factual determination in the opinion that "[i]n this case, the mishap took place in an area not within the actual leased area and from aught that appears from the record, an area in which the lessee (indemnitor) had no right of control."
*596 The lease contract in this case is not a contract of adhesion, and the lessee specifically promised "[t]o save the City ... harmless and to indemnify [it] against any claims or liability arising ... from any injury to any visitor, spectator or participant in any activity in any part or portion of the Civic Center, regardless of entrance gained to said Civic Center...."
The plaintiff, as the majority opinion states, was an employee, hired to be a temporary operator of a cash register. The opinion seems to suggest that the lessee is not liable under its indemnity contract because the plaintiff "entered the civic center, not from the two primary entrances, but from a service entrance at the rear of the civic center." What is so unusual about an employee of a lessee of a portion of a building coming through the service entrance? In view of the agreement the lessee had made, why should the lessor be responsible for keeping the lessee's employees out of the grand ballroom?
I cannot distinguish the facts of this case from those in Industrial Tile; therefore, I must respectfully dissent.
BEATTY, Justice (dissenting).
The clauses of the lease in question expressly refer to claims, etc., "arising out of, connected with or attributable to the use and occupancy of the facility," that is, the civic center, and to "claims ... arising or resulting from any ... participant in any activity in any part or portion of the Civic Center."
The majority's opinion states the question to be "whether as a matter of public policy such a contract can be enforced with respect to injuries that occur outside of the immediate leased premises." (Emphasis added.) It then concludes that, because the accident occurred in the ballroom of the civic center, where the indemnitor "had no right of control," and "not within the actual leased area," the contract of indemnity was unenforceable as against public policy.
This interpretation of the facts is totally unjustified. The injured party was an employee of the indemnitor who had used a service entrance of the civic center and was proceeding through the civic center to the indemnitor's display room to work when the injury occurred. Surely this was an area both parties would have expected such persons would be free to use for that purpose. Suppose the accident had occurred immediately inside the front door farthest from the "River Room"? Would the indemnitor have controlled that form of entry by an employee any more? This case should not be decided upon such a tenuous ground, and the hypothetical case used to justify the majority's aberrant view of the facts renders that ground even more tenuous.
The result is, moreover, clearly contrary to the Court's decision in Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932 (Ala.1983). In that case, we were confronted with the following indemnity clause:
"`The Subcontractor [Brown] hereby covenants to defend, indemnify, save harmless and exonerate the Contractor and the Owner as to and from all liability, claims, lawsuits and demands for personal injury and property damage arising out of work undertaken or to be performed by the Subcontractor, its employees, agents and subcontractors, and arising out of any other operation no matter by whom performed for and on behalf of the Subcontractor. The Subcontractor's above described liability insurance policies shall each contain contractual insurance coverage so as to protect the Contractor and the Owner under this indemnity agreement.'" (Emphasis added in Brown Mechanical Contractors, Inc.)
431 So.2d at 945.
In Brown Mechanical Contractors, Inc., we cited the test recognized in Industrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala. 1980):
"In Industrial Tile we held that indemnification for one's own negligence is available only where `the parties knowingly, even-handedly, and for valid consideration intelligently enter into an agreement whereby one party agrees to *597 indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, (emphasis added [in Brown Mechanical Contractors, Inc.]), 388 So.2d at 176. In that case the indemnity provision specifically made the contractor:
"`solely responsible to indemnify and hold harmless the Owner ... from and against any and all claims ... arising out of or occurring in connection with the performance of the work to be done pursuant to the contract and whether or not caused by or contributed to, or alleged to have been caused by or contributed to, by the active, passive, affirmative, sole or concurrent negligence or breach of any statutory duty, whether non-delegable or otherwise on the part of the owner...."` [Emphasis added.]
In Industrial Tile we found this language sufficient to reverse dismissal of the indemnity claim. The language of Goodner's and Brown's agreement, by contrast, is less clear, because Brown does not agree in so many words to indemnify Goodner for liability resulting from the latter's negligence. However, under Industrial Tile, such `talismanic' language is not necessary if the requisite intent is otherwise clear. The opinion in Industrial Tile expressly follows numerous earlier cases in which provisions that lacked specific reference to the negligence of the indemnitee were enforced. Since Industrial Tile, we have twice upheld similar indemnity claims based on language contained in a deed and in a lease, Eastwood Lands, Inc. v. United States Steel Corp., 417 So.2d 164 (Ala. 1982); Mitchell v. Moore, 406 So.2d 347 (Ala. 1981). [Footnote omitted.]
"... Nevertheless, with respect to indemnification for Goodner's own negligence, the language quoted and emphasized above is ambiguous. It refers only to work performed `by ... for and on behalf of the subcontractor.' This language need not encompass Goodner's own independent actions, which included, according to the trial court in a finding not contested on appeal, `failing to carefully supervise the work of its subcontractor, Brown.'"
431 So.2d at 945. The language of the contract in Brown did not "clearly and unequivocally express an intent that Brown indemnify Goodner [the general contractor of Brown] for the latter's negligence," 431 So.2d at 946. The language of the lease here did "clearly and unequivocally express an intent" to indemnify. By the express language used in the instant case, the lessee "covenant[ed] to indemnify ... the City of Montgomery ... from and against any and all ... liability, cost or expenses of any kind ... whatsoever which the City ... may sustain." Further, the lessee promised "[t]o save the City ... harmless and to indemnify [it] against any claims or liability arising ... from any injury to any ... participant in any activity in any ... portion of the Civic Center, regardless of entrance gained." Moreover, the lessee expressly agreed that "Lessor shall not be responsible for any damages or injury that may happen to the Lessee, or the Lessee's... employees ... from any cause whatsoever... and the ... Lessee hereby expressly... agrees to indemnify it [Lessor] against any and all claims for such ... damage or injury."
Thus, the indemnification agreement here does not suffer from the ambiguity found in Brown, supra. To the contrary, the intent of the parties to provide indemnity to the City of Montgomery for "expenses of any kind," for claims "from any injury" in any portion of the civic center, and "for any damages" to any of the lessee's employees "from any cause whatsoever" is clear from the language used in the lease. Indeed, if the indemnitor had wanted to restrict its liability, as the majority allows, it should have done so by specific language. Having failed to do so, the indemnitor should be held to its arm's length bargain. It follows that the trial court's ruling to the contrary was erroneous, and the majority's contrary conclusion is thus erroneous as well. In my view, the majority has thrown us back into the bramble bush of Alabama Great Southern R.R. v. *598 Sumter Plywood Corp., 359 So.2d 1140 (Ala.1978).